[No. F008714. Fifth Dist. June 17, 1988.]

LUIS AGUILAR, Plaintiff and Appellant, v.
JOHN R. JOHNSON, as Chief of Police, etc., Defendant and
Respondent.

**COUNSEL**

James J. Milam for Plaintiff and Appellant.

Carl O. Waggoner, City Attorney, for Defendant and Respondent.

**OPINION**

**BROWN (G. A.), J.***—Luis Aguilar, a police officer for the City of Turlock, appeals from a denial of a petition for writ of mandate sought against John R. Johnson as Chief of Police of the City of Turlock (Chief). Appellant prays for a writ directing the Chief to henceforth obey the provisions of the California Code of Regulations[1] and fulfill the requirements of the Turlock Police Department Manual concerning investigation of citizens' complaints against police officers, to destroy the citizen's complaint filed in appellant's file[2] and for attorneys' fees.

### FACTS

In approximately May 1985, Linda Loya filed a signed citizen's complaint on a form supplied by the police department charging Officer Aguilar with conspiracy to commit police brutality. Lieutenant Zaccaro, the officer in charge of such complaints, testified the complaint was not investigated because it was a copy rather than the original and because a criminal action was pending against the complainant arising out of the same facts as the

---

* Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1] The reference to the Code of Regulations was obviously in error. It is not shown that any sections of the Code of Regulations were violated. As conclusively demonstrated by the allegations of the petition during the hearing and briefing in the trial court, the appropriate reference is to the Public Safety Officers' Procedural Bill of Rights (Gov. Code, §§ 3300-3311).

[2] In light of the provisions of Penal Code section 832.5, subdivision (b) requiring citizens' complaints to be maintained for five years, appellant abandoned this demand in the trial court.

citizen's complaint. The complaint was placed in a confidential investigation file separate from appellant's personnel file.

In either July or August 1985, a "Pitchess Motion" was filed in the criminal case of People v. Linda Loya (also known as Gomez), the citizen complainant. At that time, the citizen's complaint was taken from the confidential complaint file and placed in appellant's personnel file and pursuant to the Pitchess motion the citizen's complaint was revealed to the court.

Appellant testified he was not advised of the existence of the complaint until April 1986. Bill Reeves, Turlock Police Officers' Association employee representative, contacted the police department and arranged a meeting between himself, Lieutenant Zaccaro and the Chief to discuss the citizen's complaint. As a result of this meeting, appellant was given the opportunity to comment on the complaint and the comments were attached to the complaint. However, the complaint has never been formally investigated.

In either May or June 1986, a meeting was held between appellant's attorney, the Turlock City Attorney, and the Chief. As a result of this meeting and a subsequent telephone conversation, the Chief removed the citizen's complaint from appellant's personnel file and agreed that in the future all citizens' complaints would be kept in a file separate and apart from the personnel files. Apparently dissatisfied with the resolution, appellant filed the instant petition.

## DISCUSSION

In discussing the specific issues, we must keep in mind that both the Legislature and the Supreme Court have spoken to the public importance of guaranteeing police officers their rights under the Public Safety Officers' Procedural Bill of Rights (Bill of Rights) (Gov. Code, §§ 3300-3311). Thus, the Legislature in enacting the Bill of Rights declared: "The Legislature hereby finds and declares that the rights and protections provided to peace officers under this chapter constitute a matter of statewide concern. The Legislature further finds and declares that effective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers. In order to assure that such stable relations are continued throughout the state and to further assure that effective services are provided to all people of the state, it is necessary that this chapter be applicable to all public safety officers, as defined in this section, wherever situated within the State of California." (Gov. Code, § 3301.)

Similarly, the Supreme Court observed in Baggett v. Gates (1982) 32 Cal.3d 128, 143 [185 Cal.Rptr. 232, 649 P.2d 874]: "Moreover, it can

scarcely be contended that plaintiffs' litigation has not conferred a 'significant benefit' on the 'general public.' Since enforcement of the Bill of Rights Act should help to maintain stable relations between peace officers and their employers and thus to assure effective law enforcement, plaintiffs' action directly inures to the benefit of the citizenry of this state. [Citation.] No one can be heard to protest that effective law enforcement is not a 'significant benefit.' "

■ Turning to the specific issues, Penal Code section 832.5 requires that each agency in the state employing peace officers must adopt a written policy for the handling of citizens' complaints.[3] *(Pena* v. *Municipal Court* (1979) 96 Cal.App.3d 77, 82 [157 Cal.Rptr. 584].)

The City of Turlock has adopted such a policy which is contained in the "Turlock Police Department Manual" (Manual) in evidence in this case. In relevant part, the Manual states: "323. INVESTIGATION PROCEDURE. . . . [¶] C. It is the responsibility of the assigned investigator to thoroughly investigate the case and submit a complete investigation report as provided under these procedures. All relevant information obtained by the investigator shall be entered into the investigation report. [¶] D. The investigation shall not be delayed or suspended because of any concurrent civil or criminal proceeding to which the complainant is a party, unless: [¶] 1. After consultation with appropriate legal authority, the Division Commander concerned determines that the complaint is a ploy to avoid prosecution and/or conviction. [¶] 2. The complainant requests such a delay and there is no reason to believe that the alleged conduct of the accused member is of a serious or continuing nature. [¶] 3. The employee has been charged with a crime arising out of the complaint. [¶] 4. Upon the explicit advice of the City Attorney or under the direction of the Chief Executive."

The citizen's complaint in this case was not investigated. The written policy above set forth adopted pursuant to Penal Code section 832.5 requires investigation of complaints regardless of whether a civil or criminal action is pending in the absence of certain exceptions. However, respondent testified that when he became chief of police, he changed this policy and adopted an unwritten policy under which no investigation would take place if a civil or criminal case to which the complainant is a party was pending.

The requirement that the procedure be in writing and available to the public evidences an intent to enhance communications between citizens and

---

[3] Penal Code section 832.5 provides: "(a) Each department or agency in this state which employs peace officers shall establish a procedure to investigate citizens' complaints against the personnel of such departments or agencies, and shall make a written description of the procedure available to the public.

"(b) Complaints and any reports or findings relating thereto shall be retained for a period of at least five years."

law enforcement agencies responsible for investigation of such complaints. (See 71 Ops.Cal.Atty.Gen. 1 (1988).)

This intent is circumvented by allowing oral modifications of the written policy. In the present case, the Chief has adopted an unwritten procedure that directly conflicts with the written procedure for investigation of complaints. This action appears to violate Penal Code section 832.5's express mandate that written procedures available to the public be adopted to investigate citizens' complaints. We hold the oral modification was ineffective to modify the written procedure.

■ The Chief next argues that subdivision (4) of section 323 of the Manual authorized delay of the investigation. As previously noted, subdivision (4) allows for a delay of an investigation "[u]pon the explicit advice of the City Attorney or under the direction of the Chief Executive." The Chief contends the change in the procedure regarding investigation of complaints where a civil or criminal action is pending was authorized by this section. Clearly, this section allows the Chief to delay investigation where the facts of an individual case indicate this is the more prudent course. In the present case, there was no "explicit advice" regarding this specific complaint. Moreover, the interpretation of this section urged by the Chief would in effect allow the exception to swallow the rule thus rendering meaningless the remaining portions of this section. Under general rules of statutory interpretation, the Chief's argument must be rejected as "an interpretation which would render terms of a statute surplusage should be avoided, and every word should be given some significance, leaving no part useless or devoid of meaning. (*City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].)" (*California State Employees' Assn.* v. *State Personnel Bd.* (1986) 178 Cal.App.3d 372, 378 [223 Cal.Rptr. 826].) Finally, adoption of this interpretation would also allow the Chief to circumvent Penal Code section 832.5's requirement that the procedure be in writing and available to the public.

■ The Chief further attempts to justify the failure to investigate on the basis that the signed complaint form was a copy rather than the original. There is nothing in the Manual or elsewhere requiring the complaint be an original. Moreover, in a somewhat contradictory argument, the Chief contends that the complaint could not be destroyed because to do so would violate Penal Code section 832.5 which requires that citizens' complaints be maintained for five years. As appellant notes, "the fact that the [Chief] has argued and continues to argue that the complaint must be preserved pursuant to the requirements of the California Penal Code establishes the validity of the complaint." We conclude the Chief violated the Manual by delaying the investigation of the complaint.

■   Appellant next contends the Chief violated sections 3305 and 3306 of the Government Code's Bill of Rights by failing to promptly notify him of the complaint and providing him an opportunity to comment on the complaint before placing it in his personnel file.

Government Code section 3305 provides: "No public safety officer shall have *any comment adverse to his interest* entered in his personnel file, or any other file used for any personnel purposes by his employer, without the public safety officer having first read and signed the instrument containing the adverse comment indicating he is aware of such comment, except that such entry may be made if after reading such instrument the public safety officer refuses to sign it. Should a public safety officer refuse to sign, that fact shall be noted on that document, and signed or initialed by such officer." (Italics added.)

Government Code section 3306 provides: "A public safety officer shall have 30 days within which to file a written response to *any adverse comment* entered in his personnel file. Such written response shall be attached to, and shall accompany, the adverse comment." (Italics added.)

The Chief argues failure to notify appellant of the complaint did not violate these provisions because a citizens' report does not constitute an adverse comment within the meaning of these two sections. Logic and general rules of statutory construction suggest that a citizens' complaint that contains allegations of police brutality is a "comment adverse to [the officer's] interest."

Under basic rules of statutory construction "courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them. [Citations.]" (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) As relevant here, Webster defines comment as "an observation or remark expressing an opinion or attitude. . . ." (Webster's Third New Internat. Dict. (1981) p. 456.) "Adverse" is defined as "in opposition to one's interest: DETRIMENTAL, UNFAVORABLE." (*Id.* at p. 31.)

Appellant's interpretation that a citizens' complaint constitutes an adverse comment within the meaning of Government Code sections 3305 and 3306 is supported by the usual, ordinary meaning of the words. As appellant notes, police brutality constitutes a major violation under the Turlock Police Department Manual and would affect any present or future discipline. Moreover, although the Chief contends uninvestigated complaints are not considered in making personnel decisions, this appears to be a somewhat unsupported and self-serving declaration. Their placement in an officer's personnel file could potentially lead to not only adverse personnel

decisions but could also result in a more severe penalty being imposed in a subsequent disciplinary proceeding. Because of this potential adverse impact on the officer, the complaint is an "adverse comment" within the meaning of these sections. The Chief's contention to the contrary is specious.

Although not expressly stated, the Chief appears to argue that the term "comments adverse" refers only to comments made by law enforcement personnel. The statutes make no such distinction between adverse comments made by law enforcement personnel and adverse comments made in the form of citizens' complaints. Rather, both sections refer to *any* adverse comment. In construing a statute a court is "not authorized to insert qualifying provisions not included and may not rewrite the statute to conform to an assumed intention which does not appear from its language." (*People* v. *One 1940 Ford V-8 Coupe* (1950) 36 Cal.2d 471, 475 [224 P.2d 677]; see also *Jordan* v. *Superior Court* (1981) 116 Cal.App.3d 202, 210 [172 Cal.Rptr. 30].) Because the Chief's interpretation of the statute requires insertion of a distinction not made by the statute, it must be rejected.

■ The Chief further argues the complaint cannot be considered an adverse comment because "it would be virtually impossible to obtain an officer's signature prior to the time a citizen's complaint is received, and a violation of section 832.5 would occur if respondent refused acceptance of the complaint until the officer's signature was affixed." This argument is patently unmeritorious. The complaint could be accepted and simply not placed in the personnel file until the officer had the opportunity to comment. Similar procedures are undoubtedly followed prior to the placement of an adverse evaluation in the officer's personnel file.

■ The Chief further argues that even assuming appellant was entitled to comment on the complaint, he has already received any rights to which he was entitled. In this regard, the Chief notes that appellant has been given the opportunity to comment and has in fact commented on the complaint and that the Chief has agreed that in the future all citizens' complaints will be kept in a separate "confidential citizen's [*sic*] complaint file." Thus, the Chief contends, the case has been settled.

Although the Chief has belatedly provided an opportunity to comment on this complaint, he has never agreed to follow procedures set forth in the Manual for investigation of complaints and maintains that, under the oral modification of the written policy, he need not investigate complaints when a civil or criminal action is pending. As previously noted, the adoption of the oral modification violates the spirit, and the express mandate, of Penal Code section 832.5. Further, the complaint has never been formally investi-

gated. Moreover, the Chief steadfastly maintains that a citizens' complaint is not an adverse comment within the meaning of Government Code sections 3305 and 3306 and thus an officer does not have a right to comment on such complaints when filed. Because a citizens' complaint is an adverse comment, the Chief's position violates these sections. Because appellant seeks to compel the Chief to comply with the various applicable statutory provisions, and because the Chief urges compliance is not required, the case has not been resolved.

■ That the Chief has agreed to place complaints in a separate file does not excuse compliance with Government Code sections 3305 and 3306. Our Supreme Court has rejected this argument under an analogous provision of the Education Code. (*Miller* v. *Chico Unified School Dist.* (1979) 24 Cal.3d 703 [157 Cal.Rptr. 72, 597 P.2d 475].)

In *Miller,* a principal was reassigned to a teaching position allegedly in reliance on a confidential memorandum that contained adverse comments regarding the principal's performance. The principal filed a petition for writ of mandate seeking reinstatement to his position alleging the school board's failure to notify him of this memorandum and its failure to provide an opportunity to comment violated Education Code section 44031. This section, much like the ones involved in the present case, provides a school district employee must be given notice and an opportunity to comment on "derogatory information in their personnel files 'which may serve as a basis for affecting the status of their employment.'" (*Miller, supra,* 24 Cal.3d at p. 706.) The trial court denied the writ concluding that compliance with Education Code section 44031 was "not a prerequisite to reassignment of a principal to a teaching position . . . ." (*Id.* at pp. 706-707.)

The Court of Appeal reversed and rejected the school board's argument that Education Code section 44031 was inapplicable because the memoranda was never placed in the principal's personnel file. The court stated: "A school district, however, may not avoid the requirements of the statute by maintaining a 'personnel file' for certain documents relating to an employee, segregating elsewhere under a different label materials which may serve as a basis for affecting the status of the employee's employment. Nor . . . may the school district insulate itself by simply neglecting to file material which the statute contemplates will be brought to the employee's notice." (*Miller, supra,* 24 Cal.3d at pp. 712-713.)

Similarly, here the Chief's compliance with Government Code sections 3305 and 3306 is not excused simply because the complaint is placed in a file separate from the personnel file.

■ The Chief also argues that the appellant should exhaust his remedies provided by the city grievance procedure before resorting to the court. The

claim is clearly without merit. Government Code section 3309.5, subdivision (b) provides the superior court shall have the initial jurisdiction in any case arising under the Bill of Rights.[4] Further, *Mounger v. Gates* (1987) 193 Cal.App.3d 1248 [239 Cal.Rptr. 18], is a complete answer to the Chief's position. That case held that because of Government Code section 3309.5 a police officer is not required to exhaust administrative remedies prior to seeking judicial relief from alleged violations of the Bill of Rights.

■ Appellant seeks an award of attorneys' fees pursuant to Code of Civil Procedure section 1021.5 (hereafter section 1021.5).[5]

The Chief argues that even assuming appellant is a "successful party," attorneys' fees should not be awarded because there has been no "large benefit conferred upon the general public or a large group of people." The Chief concedes that attorneys' fees have frequently been awarded in cases enforcing a police officer's rights under the Bill of Rights. However, the Chief contends the rights vindicated in the present case "in no way approach the importance of those dealt with in *Baggett*."

Contrary to the Chief's assertion, the rights enforced in this case fall "within the range of significance found sufficient to warrant attorney fees awards in earlier cases." (*Los Angeles Police Protective League* v. *City of Los Angeles* (1986) 188 Cal.App.3d 1, 12 [232 Cal.Rptr. 697].) In *Baggett* v. *Gates, supra,* 32 Cal.3d 128, the right enforced was the police officer's right to an administrative appeal when reassigned to lower paying positions. (*Baggett, supra,* at p. 143.) In holding the action met the requirements for an award of attorneys' fees, the court stated: "Analysis of plaintiffs' action leads to the conclusion that there was no reasonable basis for the trial court's denial of their motion for attorney fees. Plaintiffs' action resulted in securing for themselves and many others the basic rights and protections of the Bill of Rights Act. This court has today concluded that these rights and protections are matters of statewide concern. It follows that the rights vindicated by plaintiffs are sufficiently 'important' to justify an attorney fee award. [Citation.]" (*Id.* at p. 143.)

---

[4] Government Code section 3309.5, subdivision (b) provides: "The superior court shall have initial jurisdiction over any proceeding brought by any public safety officer against any public safety department for alleged violations of this section."

[5] Section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

In *Mounger* v. *Gates, supra,* 193 Cal.App.3d 1248, the court concluded that appellant had satisfied the first element of section 1021.5 where the action resulted in a determination that police officers need not exhaust their administrative remedies before seeking judicial relief for alleged violations of Government Code section 3303. (*Id.* at p. 1259.) The court further found that the second element of section 1021.5 had been satisfied in that the "decision benefits not only Mounger but also all public safety officers in the state." (*Ibid.*) However, the court concluded that remand was necessary for a determination of whether appellants satisfied the last criterion of section 1021.5: whether the action "imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter." (*Mounger, supra,* at p. 1259; *Baggett, supra,* at p. 142.)

Similarly, here, appellant's action will result in affording officers the right to be made aware of and to comment on citizens' complaints before they are placed in the officer's personnel file. Moreover, the decision benefits not only appellant but all public safety officers. "[A]s the Supreme Court observed in *Baggett* the citizenry as a whole benefits from a decision like this which serves the legislative purpose of promoting stable employer-employee relations in public safety organizations." (*Mounger* v. *Gates, supra,* 193 Cal.App.3d at p. 1259.) As in *Baggett* and *Gates,* appellant's action resulted in enforcement of important provisions in the Bill of Rights and "conferred a 'significant benefit' on the 'general public.' " (*Baggett* v. *Gates, supra,* 32 Cal.3d at p. 143.) Thus, we conclude that appellant has satisfied the first two tests of section 1021.5. Because the trial court has not considered the issue and thus the record does not contain evidence of the amount of attorneys' fees involved, on remand the trial court can determine if the final criterion of section 1021.5 is met and if favorable to the appellant determine the amount of fees to which appellant is entitled.

■ Finally, we address the appropriateness of the remedy. The petitioner mistakenly entitled his petition one for administrative mandamus. The Chief concedes it should be treated as one for regular mandamus pursuant to Code of Civil Procedure section 1085. The relief for which appellant prays looks to the future in that he asks that the chief of police be ordered to henceforth comply with the departmental Manual and the law. It appears that the requirements of the Manual and of the Bill of Rights, with the exception of conducting an investigation, has belatedly been complied with. Technically, the writ of mandamus will not issue to compel the performance of a future duty or to forestall anticipated error; it will issue only when there is a present and actual duty to perform an act required by law. (*Communist Party* v. *Peek* (1942) 20 Cal.2d 536, 540 [127 P.2d 889]; *Northridge Park County Water Dist.* v. *McDonell* (1958) 158 Cal.App.2d 123 [322 P.2d 25].) However, contrary to the Chief's contention, where

there is a clear mandatory statutory duty, no demand to act is necessary before seeking court relief.

Government Code section 3309.5, subdivision (c) expressly expands the authority of the superior court. That section states: "In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer."

While the petition is labeled as being in mandamus, in paragraph 10 of the petition, the appellant specifically refers to seeking relief pursuant to Government Code section 3309.5 and the prayer of the petition primarily seeks relief from future acts. Filed at the same time as the petition was a memorandum of points and authorities in support of the petition which quotes in full the body of Government Code section 3309.5.

Thus, neither the Chief, nor his attorney, could have been misled by the erroneous labeling of the petition as one in mandamus and no prejudice to them appears. Quite clearly, looking to the substance of the petition rather than the form, the petition was one for relief in the nature of a mandatory injunction to command compliance with the Manual and the Bill of Rights.

In the light of the foregoing and in the interest of judicial economy, we deem the petition to have been one seeking mandatory injunctive relief to command compliance with the Manual and the Bill of Rights and that it should have been treated as such by the trial court.

The order of the superior court denying relief is reversed and the cause is remanded with directions to treat the petition as one for mandatory injunctive relief and to enter an appropriate order consistent with this opinion including a determination regarding attorneys' fees. Appellant is awarded his costs on appeal.

Hamlin, Acting P. J., and Ardaiz, J., concurred.

A petition for a rehearing was denied July 5, 1988.