[No. C030428. Third Dist. Sept. 3, 2002.]

SACRAMENTO POLICE OFFICERS ASSOCIATION et al., Plaintiffs and Appellants, v.
ARTURO VENEGAS, JR., as Chief of Police, etc., et al., Defendants and Respondents.

COUNSEL

Mastagni, Holstedt & Chiurazzi, Richard J. Chiurazzi, Charles H. Briggs III and Kasey Christopher Clark for Plaintiffs and Appellants.

Samuel L. Jackson, City Attorney, Bruce Cline and Marcos A. Kropf, Deputy City Attorneys, for Defendants and Respondents.

OPINION

**SCOTLAND, P. J.**—The Sacramento Police Officers Association and police officer Michael B. Kime appeal from a judgment denying their petition for a writ of mandate against Arturo Venegas, Jr., as Chief of Police, and the City of Sacramento. The interests of the Sacramento Police Officers Association and of Kime are unified; thus, for convenience, we will refer to their positions as those of Kime. The interests of Venegas and of the City of Sacramento are unified and, in fact, are the interests of Kime's employer, the Sacramento City Police Department (the Department); for convenience, we will refer to their interests as those of the Department.

Kime contends that, pursuant to the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.), he is entitled to read and respond to information maintained in the Department's internal affairs section regarding an allegation of neglect of duty by Kime relating to the theft of a city-owned car entrusted to him. The Department acknowledges that its internal affairs section maintains an index card for each of the Department's public safety officers and that the index card "lists all complaints made against that officer, whether founded, unfounded, exonerated or not sustained." The Department also acknowledges that its internal affairs index card in Kime's name refers to an investigation of the stolen car incident. However, the Department asserts that Kime has no right to review this information because the incident did not result in any personnel action adverse to Kime, and because the internal affairs index card is not a personnel file or any other file used for personnel purposes by the Department.

The resolution of this dispute turns on the interpretation of Government Code section 3305, which provides that a comment adverse to a public safety officer shall not be entered in the officer's personnel file "or any other file used for any personnel purposes" without the officer "having first read" the comment. The officer then has 30 days in which to file a written response to any adverse comment entered into the officer's personnel file. (Gov. Code, § 3306.)

For reasons that follow, we conclude the Department's internal affairs index card in Kime's name that lists all complaints made against him is a file "used for . . . personnel purposes" within the meaning of the Public Safety Officers Procedural Bill of Rights Act. Therefore, if the internal affairs index card contains any comment adverse to Kime's interest with respect to the stolen car incident, he is entitled to read and respond to the adverse comment even though it did not result in any personnel action against him. Because the trial court ruled otherwise, we shall reverse the judgment denying Kime's petition for relief.

## Factual and Procedural Background

During 1995, Kime was assigned to the Department's explosive ordinance detail, commonly referred to as the bomb squad. He was a supervisor and technician. As the supervising sergeant of the bomb squad, Kime was entitled to certain benefits, including an on-call pay differential, overtime pay during call-outs, and the use of a city take-home vehicle.

In late 1995, Kime's take-home vehicle was stolen from his possession. Hours later, it was recovered by the Department. Kime believes that his supervisor made a complaint charging Kime with neglect of duty. In any event, an investigation by the Department's internal affairs section was commenced. Pending the investigation, Kime was removed from his position with the bomb squad.

Kime commenced litigation over his removal from the bomb squad. (*Sacramento Police Officers Assn. v. Venegas* (Super. Ct. Sacramento County, 1996, No. 96CS00412).) It was resolved when the Department conceded that Kime was entitled to administrative review and agreed to return him to his position with the bomb squad. Ultimately, no adverse action was taken as the result of the internal affairs investigation.

The lawsuit now before us began when Kime filed a petition for a writ of mandate pursuant to the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3309.5), seeking access to, and an opportunity to review and rebut, any document in any file within the Department that contains comments adverse to his interests—specifically, any document relating to an allegation that Kime was neglectful in his duty with respect to the theft of his city-owned car.

In response to the petition, the Department asserted there are no records in Kime's personnel files concerning the stolen car incident, and said: "While Internal Affairs may have records relating to alleged misconduct, such

allegations did not result in discipline nor are the Internal Affairs records a personnel record."

The Department explained that there are two levels at which disciplinary matters may be addressed. Investigations of misconduct of a minor nature—those which can result in informal disciplinary action—are handled at the "watch level." If informal action is taken, the information is retained at the watch level for one year, sent to and retained at the chief's office for one year, and then destroyed. Once destroyed, there is no record of informal discipline. Allegations of misconduct of a more serious nature are investigated by the internal affairs section of the Department. Information concerning such matters is not placed in an officer's personnel file unless disciplinary action is taken and the requirements of the Public Safety Officers Procedural Bill of Rights Act have been met.

A representative of the Department declared that an examination of Kime's personnel file kept in the personnel section, of pertinent watch level files, and of informal disciplinary records kept in the office of the chief of police revealed no entries or records, adverse or otherwise, with respect to the stolen car incident addressed in Kime's petition. However, the Department conceded that its internal affairs section has an index card that refers to the investigation of the theft of Kime's city-owned car.

The declaration stated that the Department investigates complaints against officers pursuant to Penal Code section 832.5 and, consistent with that statute, retains complaints for five years. All complaints made against an officer are logged in the internal affairs section on an index card kept in the officer's name. Unless disciplinary charges are sustained, such complaints are not used for evaluations, assignments, status changes, or to impose discipline, and they are kept confidential.

According to the declaration, the internal affairs index card in Kime's name reflects that an investigation was conducted about the theft of Kime's city-owned car, but that no adverse personnel action was taken against him.

The trial court denied the petition for a writ of mandate. The court reasoned that Kime had failed to establish a right to disclosure under the Public Safety Officers Procedural Bill of Rights Act because (1) he had not established that any adverse personnel action was taken against him, and (2) the Department had shown that internal affairs index cards are not used for evaluations, assignments, status changes, or to impose discipline.

DISCUSSION

I

■ Kime begins his argument with a discussion of Government Code section 3303, subdivision (g), a statute that we conclude is not applicable to this dispute. (Further section references are to the Government Code unless otherwise specified.)

Section 3303 establishes conditions for the interrogation of public safety officers who are under investigation that could lead to punitive action. Subdivision (g) of section 3303 provides: "The complete interrogation of a public safety officer may be recorded. If a tape recording is made of the interrogation, the public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. *The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential.* No notes or reports that are deemed to be confidential may be entered in the officer's personnel file. The public safety officer being interrogated shall have the right to bring his or her own recording device and record any and all aspects of the interrogation." (Stats. 1994, ch. 1259, § 1, pp. 7904-7905, italics added.)

In *Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564 [273 Cal.Rptr. 584, 797 P.2d 608], the Supreme Court addressed whether a peace officer who was the subject of an internal police department investigation into suspected officer misconduct was entitled by section 3303 to review the reports and complaints before being interrogated about the allegations. (51 Cal.3d at pp. 568-569, 571.) The court held the statute does not compel preinterrogation discovery. (*Id.* at p. 579.) In addition to observing that the statutory language does not demonstrate an intent to grant the right to discovery of reports and complaints before an officer's interrogation (*id.* at pp. 576-577), the court noted that preinterrogation discovery is not fundamental to the fairness of an investigation and could frustrate the effectiveness of the interrogation. (*Id.* at pp. 578-579.)

Kime argues that, because the Department's internal affairs investigation of his alleged neglect of duty has ended, the purposes of confidentiality reflected in *Pasadena Police Officers Assn. v. City of Pasadena, supra,* 51 Cal.3d 564, no longer apply and, thus, section 3303, subdivision (g), requires the Department to produce the complaint and related documents. The Department retorts that section 3303, subdivision (g), gives the Department the

absolute discretion to deem information to be confidential and that there is no limit to the duration of such confidentiality.

We conclude that section 3303, subdivision (g), is inapposite because it applies to the interrogation of a peace officer who is under investigation, whereas the investigation into Kime's alleged neglect of duty has ended and Kime concedes that he was never interrogated.

However, our conclusion that section 3303, subdivision (g), is inapplicable does not lend support to the position of either party. Because Kime is not under investigation, has not been and will not be interrogated, and no further proceedings are contemplated, section 3303, subdivision (g), does not give him a right to the discovery of materials he seeks. Consequently, it is irrelevant whether the termination of the investigation also terminated the need for confidentiality reflected in that subdivision. Likewise, the reference in section 3303, subdivision (g), to information "deemed by the investigating agency to be confidential" does not help the Department. That subdivision does not give the Department an absolute right to deem any and all information confidential and to assert such confidentiality against any and all requests for access. It applies in the circumstances set forth in section 3303, i.e., with respect to the interrogation of a peace officer under investigation. Therefore, if Kime points to a specific statutory right of access to particular information, other than section 3303, subdivision (g), the Department cannot rely upon section 3303, subdivision (g), to deny access to the information.

## II

■    As recognized by both sides, the particular provisions of the Public Safety Officers Procedural Bill of Rights Act (hereafter the Bill of Rights Act) that apply here are sections 3305 and 3306.

Section 3305 provides: "No public safety officer shall have any comment adverse to his interest entered in his personnel file, or any other file used for any personnel purposes by his employer, without the public safety officer having first read and signed the instrument containing the adverse comment indicating he is aware of such comment, except that such entry may be made if after reading such instrument the public safety officer refuses to sign it. Should a public safety officer refuse to sign, that fact shall be noted on that document, and signed or initialed by such officer." (Stats. 1976, ch. 465, § 1, p. 1204.)

Section 3306 provides: "A public safety officer shall have 30 days within which to file a written response to any adverse comment entered in his

personnel file. Such written response shall be attached to, and shall accompany, the adverse comment." (Stats. 1976, ch. 465, § 1, p. 1204.)

## A

In construing these statutory provisions, we are guided by the recent decision of our Supreme Court in *County of Riverside v. Superior Court* (2002) 27 Cal.4th 793 [118 Cal.Rptr.2d 167, 42 P.3d 1034] (hereafter *County of Riverside*), published after the trial court ruled in this matter.

The issue addressed in *County of Riverside* arose after the City of Perris disbanded its police department, discharged its officers, and contracted with the county for law enforcement services. (*County of Riverside, supra,* 27 Cal.4th at p. 796.) To staff the new unit that would provide the services, the county sheriff's department hired, on a probationary basis, former City of Perris police officers, including Xavier Madrigal. Continuing employment was conditioned upon their successful completion of the background investigation applicable to new applicants for the position of deputy sheriff. (*Id.* at pp. 796-797.) Madrigal was discharged while still on probation. He suspected that he was dismissed because his background investigation revealed a complaint that he allegedly had engaged in illegal conduct while serving as a City of Perris police officer. (*Id.* at pp. 795, 797.)

Madrigal brought an action against the county, seeking, among other things, disclosure of the sheriff's background investigation file concerning Madrigal. (*County of Riverside, supra,* 27 Cal.4th at p. 797.) The parties agreed that if the investigation had been completed before Madrigal was hired, and if the investigation had caused the county not to hire him, he would have no right to view documents in the investigative file because there would have been "no employment relationship, no personnel file, and hence no question of the investigation file being subject to disclosure under the Bill of Rights Act." (*Id.* at p. 799.) It follows, the county argued, that because the conduct in question occurred prior to the commencement of Madrigal's employment with the county, the investigative file was not part of Madrigal's "personnel file" as that term is used in the Bill of Rights Act; hence, it was not subject to disclosure. (*Id.* at pp. 800-801.) The Supreme Court disagreed, stating: "The plain language of the Bill of Rights Act is inconsistent with the County's effort to distinguish its background investigation file in this way." (*Id.* at p. 801.)

Quoting with approval the decision in *Aguilar v. Johnson* (1988) 202 Cal.App.3d 241 [247 Cal.Rptr. 909] (hereafter *Aguilar*), the Supreme Court concluded that the language in the Bill of Rights Act should be construed

broadly to include any document that " ' "may serve as a basis for affecting the status of [a peace officer's] employment," ' " regardless of whether it is kept separate from the officer's general personnel file. (*County of Riverside, supra,* 27 Cal.4th at p. 802.) Accordingly, the Supreme Court "reject[ed] the assertion that a law enforcement agency's background investigation of a peace officer during probationary employment is somehow not a personnel matter subject to the Bill of Rights Act." (*Ibid.*) "The label placed on the investigation file is irrelevant. The materials in the file unquestionably ' "may serve as a basis for affecting the status of the employee's employment" ' [citing *Aguilar, supra,* 202 Cal.App.3d at p. 251]; indeed, that is the very purpose of the background investigation." (*County of Riverside, supra,* 27 Cal.4th at p. 802.) The court went on to say its conclusion that the Bill of Rights Act applies was "valid even where the background investigation concerns a matter that occurred prior to the commencement of employment." (*Ibid.*) Moreover, where "the adverse comments arise out of an investigation, the very purpose of which was to assess the employee's qualifications for continued employment, . . . the Bill of Rights Act applies, whether or not the comments are prepared and filed prior to termination." (*Id.* at p. 803.)[1]

B

Consistent with the decision in *County of Riverside, supra,* 27 Cal.4th 793, we must give appropriate consideration to the fact that the Legislature utilized broad language in enacting sections 3305 and 3306. The events that will trigger an officer's rights under those statutes are not limited to formal disciplinary actions, such as the issuance of letters of reproval or admonishment or specific findings of misconduct. Rather, an officer's rights are triggered by the entry of any adverse comment in a personnel file or any other file used for a personnel purpose. (See *County of Riverside, supra,* 27 Cal.4th at pp. 802, 803.)

*Aguilar, supra,* 202 Cal.App.3d 241, addressed the meaning of an adverse comment for the purposes of sections 3305 and 3306 of the Bill of Rights Act. It noted: "Webster defines comment as 'an observation or remark expressing an opinion or attitude. . . .' (Webster's Third New Internat. Dict. (1981) p. 456.) 'Adverse' is defined as 'in opposition to one's interest: DETRIMENTAL, UNFAVORABLE.' (*Id.* at p. 31.)" (*Aguilar, supra,* 202 Cal.App.3d at p. 249.) Thus, for example, under the ordinary meaning of the

[1] The Supreme Court expressed no opinion whether a background investigation file compiled prior to an offer of employment would become a file used for personnel purposes once the applicant is hired. (*County of Riverside, supra,* 27 Cal.4th at p. 802.) Although the court proceeded to address whether an employee may waive the protections of the Bill of Rights Act, that issue does not arise in this case.

statutory language, a citizen's complaint of brutality is an adverse comment even though it was "uninvestigated" and the chief of police asserted that it would not be considered when personnel decisions are made. (*Id.* at pp. 249-250.)

We find the reasoning in *Aguilar* to be persuasive, as did the Supreme Court in *County of Riverside, supra,* 27 Cal.4th 793. In its usual and ordinary import, the broad language employed by the Legislature in sections 3305 and 3306 does not limit their reach to comments that have resulted in, or will result in, punitive action against an officer. The Legislature appears to have been concerned with the potential unfairness that may result from an adverse comment that is not accompanied by punitive action and, thus, will escape the procedural protections available during administrative review of a punitive action. As we will explain, even though an adverse comment does not directly result in punitive action, it has the potential of creating an adverse impression that could influence future personnel decisions concerning an officer, including decisions that do not constitute discipline or punitive action. (See *Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209, 1222 [85 Cal.Rptr.2d 660].) The legislative remedy was to ensure that an officer is made aware of adverse comments and is given an opportunity to file a written response, should he or she choose to do so.

Accordingly, we reject the Department's claim that Kime had no right to review any adverse comment about the stolen police car incident because the information did not result in any adverse personnel action. To the contrary, we conclude that, regardless of whether the employing agency contemplates or has rejected further action regarding an adverse comment made against a peace officer employee, the officer is entitled to disclosure of the comment if it is entered in an agency file used for a personnel purpose. Our conclusion is consistent with the reasoning of *County of Riverside, supra,* 27 Cal.4th 793, which implies that an adverse comment contained in a background investigation file is subject to disclosure even if the officer does not suffer some sort of adverse consequence, as long as it has that potential. (*Id.* at p. 802 [the Bill of Rights Act applies to any comment that *may* serve as a basis for adversely affecting the status of the peace officer's employment].)[2]

### C

■ Nevertheless, the Department argues that it is not required to disclose adverse comments in records kept by its internal affairs section

---

[2]In any event, the Department in fact removed Kime from his position with the bomb squad pending the Department's internal affairs investigation. Although it reversed itself and returned Kime to his position when he commenced litigation, it is too late for the Department to maintain that the adverse comment in dispute could have no effect on Kime's existing employment status. The comment could affect his employment status because it already has done so, at least temporarily.

because such records are not personnel files and are not used for any personnel purposes by the Department. The argument is unpersuasive.

First, the Department's contention is belied by the fact that it handles all complaints about its peace officer employees pursuant to the provisions of Penal Code section 832.5 et seq., which require, among other things, that (1) "[e]ach department or agency in this state that employs peace officers shall establish a procedure to investigate complaints by members of the public against the personnel of these departments or agencies, and shall make a written description of the procedure available to the public" (Pen. Code, § 832.5, subd. (a)), and (2) "[c]omplaints and any reports or findings relating to these complaints shall be retained for a period of at least five years" (Pen. Code, § 832.5, subd. (b)).

While this statutory scheme addresses "complaints by members of the public" (Pen. Code, § 832.5, subd. (a)), the Department applies the scheme without distinguishing between complaints by the public and complaints by fellow peace officers.[3]

The scheme implicitly encompasses three broad categories of complaints, based upon their disposition: (1) complaints upon which disciplinary action is proposed and to which normal administrative procedures are applicable—the Department refers to this type of complaint as "founded"; (2) complaints that are affirmatively disproved, which are referred to in the statute as "frivolous, unfounded, or exonerated;"[4] and (3) complaints that are not affirmatively disproved but are regarded as not established sufficiently to support disciplinary action—the Department refers to this type of complaint as "not sustained."

Complaints against a peace officer that are frivolous, unfounded, or exonerated "shall not be maintained in that officer's general personnel file"

---

[3]Nothing in the statutory scheme either requires or precludes a law enforcement agency from treating a complaint by a peace officer in the same manner as a complaint by a member of the public for purposes of Penal Code section 832.5. We consider the Penal Code provisions here because the Department, by declaration, states that it treats peace officer complaints the same as citizen complaints pursuant to those provisions.

[4]For this purpose, "frivolous" is given the meaning set forth in Code of Civil Procedure section 128.5, which permits a trial court to impose sanctions on a party or attorney. (Pen. Code, § 832.5, subd. (c).) Thus, a "frivolous" complaint is one that is "totally and completely without merit" or is taken "for the sole purpose of harassing [the peace officer]." (Code Civ. Proc., § 128.5, subd. (b)(2).) A complaint is "unfounded" when the investigation has "clearly established that the allegation is not true" (Pen. Code, § 832.5, subd. (d)(2)), and a complaint is "exonerated" when the investigation has "clearly established that the actions of the peace officer that formed the basis for the complaint are not violations of law or department policy." (Pen. Code, § 832.5, subd. (d)(3).)

and, instead, "shall be retained in other, separate files *that shall be deemed personnel records* for purposes of the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code) and Section 1043 of the Evidence Code [discovery or disclosure of peace officer personnel records or records maintained pursuant to Penal Code section 832.5, or information from those records]." (Pen. Code, § 832.5, subds. (b) & (c), italics added.) Penal Code section 832.5 is silent as to whether complaints that are "not sustained" may be maintained in an officer's general personnel file. However, the Department has declared it treats all complaints that do not form the basis for disciplinary action the same by maintaining them only on internal affairs index cards.

Because a peace officer's adverse comment against another peace officer is documented on the same internal affairs index card that contains citizen complaints, the Department has chosen to keep the complaints in a "file," so to speak, statutorily defined to be a personnel record for purposes of disclosure.

In any event, a comment alleging misconduct by a peace officer " ' "may serve as a basis for affecting the status of the [officer's] employment" ' " (*County of Riverside, supra,* 27 Cal.4th at p. 802) regardless of whether the adverse comment was made by a citizen or by another peace officer. Just as a police agency's background investigation of a peace officer during probationary employment is a personnel matter subject to the Bill of Rights Act (*ibid.*), so, too, must be the agency's internal affairs investigation of an adverse comment against one of its peace officer employees.

Indeed, the function of a police agency's internal affairs section is to "police the police" by investigating complaints and incidents to determine an officer's fitness to continue to serve, and whether disciplinary or other corrective action is required. By any definition, that is a personnel purpose. Hence, an internal affairs file or index card necessarily is a "file used for any personnel purposes" within the meaning of section 3305 of the Bill of Rights Act. As the Supreme Court said in *County of Riverside, supra,* 27 Cal.4th 793: "Where . . . the adverse comments arise out of an investigation, the very purpose of which was to assess the employee's qualifications for continued employment, . . . the Bill of Rights Act applies" (*id.* at p. 803), and the law does not permit a law enforcement agency to shield such a comment from a peace officer employee by purporting to segregate it from other personnel files. (*Id.* at p. 805.)

The purposes of sections 3305 and 3306 readily apply to an adverse comment on Kime's internal affairs index card. The Department conceded at

oral argument that if, in the future, a complaint is made against Kime and the internal affairs investigator reads Kime's index card, an unexplained and unrebutted charge of neglect of duty could color the investigator's view of Kime and affect the investigation of the new complaint. This is the type of comment adverse to his interest that the Bill of Rights Act gives Kime the opportunity to review and explain or rebut if he can.

According to the Department, disclosure is not required here because, under its procedures, no one has access to the internal affairs files except internal affairs personnel. Not so. Penal Code section 832.5, subdivision (c)(1), provides that "[m]anagement of the peace officer's employing agency shall have access to the files described in this subdivision," pursuant to which the Department maintains its internal affairs index cards. Although complaints that are determined to be frivolous, unfounded, or exonerated may not be used for punitive or promotional purposes unless the investigation is reopened for sufficient cause, they *can* be used to require counseling or additional training. (Pen. Code, § 832.5, subd. (c)(2) & (3); Gov. Code, § 3304, subd. (g).) Moreover, as we have observed and the Department has conceded, internal affairs personnel could be influenced to a peace officer employee's detriment in a future investigation if the officer's internal affairs file or index card contains an unexplained or unrebutted adverse comment.

Lastly, the Department protests that allowing a peace officer employee to discover and respond to adverse comments entered on the employee's internal affairs index card undermines public policy. In its words: "People who have complaints against police officers should be encouraged to come forward. . . . In some cases, these individuals may only be willing to come forward confidentially. Officers must be free to report misconduct without fear of reprisal or fear of being ostracized. It is common knowledge that officers who report misconduct by other officers can be labeled as 'snitches.' The 'Code of Silence' still exists in some police circles today. . . . Public policy does not support requiring disclosure of investigations and/or complaints which do not result in any disciplinary or other personnel action."

However, the Department ignores the countervailing public policy articulated by the Legislature when it found and declared that "the rights and protections provided to peace officers under [the Bill of Rights Act] constitute a matter of statewide concern. . . . [E]ffective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers. In order to assure that stable relations are continued throughout the state and to further assure that effective services are provided to all people of the state, it is necessary that this

chapter be applicable to all public safety officers . . . wherever situated within the State of California." (§ 3301.)

It is true that some persons might be dissuaded from reporting peace officer misconduct if they cannot do so confidentially. On the other hand, it is equally true that some might view a shield of confidentiality as a license to make false allegations of police misconduct. Moreover, it takes no imagination to recognize that a shield of confidentiality would make it difficult for an accused peace officer to respond to and rebut a false claim of misconduct and could lead to serious employee discontent. The Legislature has resolved these policy conflicts in favor of peace officer employees.

For all the reasons stated above, we reiterate that the Bill of Rights Act applies to any adverse comment entered on Kime's internal affairs index card.

### III

█ Despite the foregoing conclusion, the rights accorded to Kime by sections 3305 and 3306 are not as broad as the relief he seeks, i.e., an order commanding the Department to provide him with access to, and the opportunity to review and comment upon, any documents relating to the investigation concerning an allegation that Kime was negligent on duty with respect to the theft of the city-owned car entrusted to him.

As we have explained, the Bill of Rights Act entitles Kime to discover and respond to any *adverse comment* about him entered on his internal affairs index card. But he does not have the right of access to information on the index card that does not constitute an adverse comment, i.e., he is not entitled to the entirety of the Department's investigative record.

Although Kime seeks overbroad relief, he has established a prima facie case for issuance of a writ of mandate pursuant to the Bill of Rights Act by alleging that the Department maintains a file under his name, containing a charge made by a superior officer that Kime was guilty of neglect of duty with respect to the theft of Kime's city-owned car. In response, the Department has not denied that an internal affairs index card in Kime's name contains such an allegation. The Department's response does not specifically admit that Kime's internal affairs file contains an adverse comment; it simply states that the file reflects there was an investigation into the theft of Kime's police car. Of course, the Department cannot be compelled to disclose what it does not have. But it may be required to answer affirmatively whether the file contains an adverse comment and, if so, to permit Kime to discover and respond to the adverse comment.

Consequently, we will reverse the judgment and remand the matter for further proceedings to issue an appropriate writ of mandate.

## DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 26(a).)

Raye, J., and Kolkey, J., concurred.