Filed 8/24/15

# IN THE SUPREME COURT OF CALIFORNIA

|  |  |  |
|---|---|---|
| STEVE POOLE et al., | ) | S215300 |
| Plaintiffs and Appellants, | ) | |
| | ) | Ct.App. 4/3 |
| v. | ) | G047691, G047850 |
| | ) | |
| ORANGE COUNTY FIRE AUTHORITY, | ) | Orange County Super. Ct. |
| | ) | No. 30-2011-00463651 |
| Defendant and Respondent. | ) | |

Under the Firefighters Procedural Bill of Rights Act (Gov. Code, § 3250 et seq.),[1] a firefighter has the right to review and respond to any negative comment that is "entered in his or her personnel file, or any other file used for any personnel purposes by his or her employer." (§ 3255.) This case presents the question whether section 3255 gives an employee the right to review and respond to negative comments in a supervisor's daily log, consisting of notes that memorialize the supervisor's thoughts and observations concerning an employee, which the supervisor uses as a memory aid in preparing performance plans and reviews. We hold that here, because the log was not shared with or available to anyone other than the supervisor who wrote the log, it does not constitute a file

---

[1] References to statutes are to the Government Code unless otherwise indicated.

1

"used for any personnel purposes by his or her employer" and section 3255 does not apply.

## I. FACTS

Captain Culp, plaintiff Steve Poole's supervisor, maintained what he called a "daily log" regarding each of the employees that he supervised. He created the log using both a computer and handwritten notes. He created a separate file for each employee, stored on a flash drive and also in hard copy, which he kept in his desk with the employee's name on it. He included in the log "[a]ny factual occurrence or occurrences that would aid [him] in writing a thorough and fair annual review." He kept these logs throughout the time he was supervising each employee. Culp would address with the employee behavior recorded in the log about which he had concerns, and if the behavior nevertheless continued it might be mentioned in the performance review.

Culp kept the log concerning plaintiff from December of 2008 to July of 2010. He used the log as a reference in preparing annual reviews and assessments of plaintiff's performance under a performance improvement plan. The daily log prepared by Culp regarding plaintiff included many descriptions of plaintiff's activities on the job and his interactions with Culp, noting both positive and negative aspects of plaintiff's behavior. Some of the incidents described in the log were included in plaintiff's annual performance reviews and his assessments under a performance improvement plan. For example, the log notes several incidents in which plaintiff failed to complete his assigned duties in cleaning up the fire station. As also noted in the log, Culp addressed his concerns with plaintiff before the annual evaluation in an attempt to correct plaintiff's behavior, and plaintiff's performance on cleanup duties was addressed in a performance improvement plan. Plaintiff's annual performance review indicated that this was an area in which he needed to continue to show improvement.

2

Many incidents recorded in the log were never included in a review. For example, Culp noted in the log that plaintiff left a training class early one day and went outside to talk on his cell phone. Culp later discussed the incident with plaintiff and his log notes indicate that plaintiff explained that he had already taken that class and passed the associated examination. The log also describes a training session conducted in a stressful environment during which plaintiff became very anxious. Culp discussed this incident with plaintiff and offered him additional training. Neither of these incidents was mentioned in plaintiff's annual performance review.

From time to time Culp discussed his concerns about plaintiff's performance with Culp's own supervisor, Battalion Chief Phillips, Office Chief Camargo, human resources personnel, and attorneys for the Orange County Fire Authority, relating some of the incidents recorded in his daily log. But he did not share the log itself with them and he did not allow other employees to review the daily log.

Plaintiff had the opportunity to review all of his performance evaluations, which he understood were then placed in his personnel file at headquarters. When he went to the human resources department at headquarters and asked to see his personnel file he was allowed to review it and make copies of his performance evaluations. Plaintiff showed a copy of his performance evaluation to a union representative, Bob James. The level of documentation in the review caused James to wonder whether Culp may have been maintaining a file on plaintiff at the stationhouse. James demanded that Culp provide him with a copy of plaintiff's "station file," and Culp gave him a copy of his daily log regarding plaintiff.

Shortly thereafter, plaintiff wrote to the director of human resources of the Orange County Fire Authority, asserting that the inclusion of negative comments in Culp's daily log without providing plaintiff an opportunity to review those

3

comments violated Government Code section 3255. He requested that all negative comments be removed from the log and that all "personnel files" be made available for his inspection. In response, the fire authority denied his request, asserting that section 3255 did not apply to Captain Culp's "supervisory notes."

Plaintiff and the Orange County Professional Firefighters Association filed a petition and complaint in the superior court, seeking declaratory and injunctive relief, damages, civil penalties, and a writ of mandate directing defendants to comply with section 3255 before including adverse comments in plaintiff's personnel files. After a trial based on the papers (including transcripts of depositions of both plaintiff and Culp), the trial court denied relief, concluding that Culp's daily log was not subject to section 3255. The trial court observed, "If Culp made a negative note about [plaintiff] in his notes, but did not address it in the yearly evaluation, it does not exist, at least for personnel purposes."

The Court of Appeal reversed. It reasoned that the daily log constituted a "file used for . . . personnel purposes" (§ 3255) because a substandard performance evaluation was based on adverse comments contained in the daily log and because Culp orally revealed some of the contents of the daily log to his battalion chief. Therefore, the Court of Appeal concluded that section 3255 required that plaintiff be given an opportunity to respond to the negative comments in the log before they were "made known to the employer." We granted review.

## II. ANALYSIS

Because this appeal involves the application of a statute to undisputed facts, our review is de novo. (See *Southern California Edison Co. v. State Board of Equalization* (1972) 7 Cal.3d 652, 659.)

The Firefighters Procedural Bill of Rights Act (the Act) provides firefighters with certain rights concerning their employment. (§ 3250 et seq.) At

4

issue here is section 3255, which provides that "[a] firefighter shall not have any comment adverse to his or her interest entered in his or her personnel file, or any other file used for any personnel purposes by his or her employer, without the firefighter having first read and signed the instrument containing the adverse comment indicating he or she is aware of the comment." (§ 3255.) The firefighter has 30 days to respond, in writing, to an adverse comment, and "[t]he written response shall be attached to, and shall accompany, the adverse comment." (§ 3256.)

Captain Culp, the author of the daily log, was the only person who had access to it. He discussed some of the incidents described within it with his superiors and with human resources personnel, but it is undisputed that he did not permit them to review the log itself. To the extent Culp used any of the adverse comments contained in the log in any review or assessment of plaintiff's performance, those comments were shared with plaintiff in accordance with section 3255. The question presented under these undisputed facts is whether negative comments contained in a document memorializing a supervisor's own thoughts and observations that is not itself made available to or shared with anyone else comes within section 3255. As explained below, we conclude that any negative comments contained in the log that were not included in a performance review or performance improvement plan concerning plaintiff were not entered in a file "used for any personnel purposes by his or her employer." (§ 3255.)

The Act does not define the phrase "used for any personnel purposes by his or her employer." In discerning the scope and meaning of section 3255, " '[w]e begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the

5

most reliable indicator of legislative intent.' [Citations.]  The plain meaning controls if there is no ambiguity in the statutory language." (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.)  In interpreting a statutory provision, "our task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results." (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1291.)

The statutory language referring to a file "used for any personnel purposes by his or her employer" might, in isolation, be read broadly enough to include Culp's log, which he used in the performance of his duties as a supervisor.   But critical to an understanding of section 3255 is its statutory context.  (See *Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276 [" 'we do not construe statutes in isolation, but rather read every statute with "reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' "]; *McMahon v. City of Los Angeles* (2008) 172 Cal.App.4th 1324, 1332 (*McMahon*) [when construing language in the Public Safety Officers Bill of Rights Act, "we must read it in context, as part of a comprehensive legislative scheme"].)  Reading the statutory language in context convinces us that the Legislature did not intend section 3255 to be read so broadly.

Section 3255 is one of three neighboring provisions of the Act that concern the rights of firefighters with respect to their personnel files.  Section 3255 requires the employer to inform the firefighter of any comment adverse to his or her interest in a personnel file or any other file used by the employer for personnel purposes.  Section 3256 entitles a firefighter to respond in writing to any adverse comment "entered in his or her personnel file" and the response "shall be attached to, and shall accompany, the adverse comment."  Section 3256.5 entitles a

6

firefighter to inspect "personnel files that are used or have been used to determine that firefighter's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action." (§ 3256.5, subd. (a).) If, after reviewing the file, "the firefighter believes that any portion of the material is mistakenly or unlawfully placed in the file, the firefighter may request, in writing, that the mistaken or unlawful portion be corrected or deleted." (§ 3256.5 subd. (c).) The employer must respond to the request in writing, and both the request and the response become part of the personnel file. (§ 3256.5, subds. (c), (d).)

As subdivision (a) of section 3256.5 makes clear, the Legislature was not concerned with any and all files that might in some sense be connected with personnel matters; the Legislature was, rather, specifically concerned with "personnel files that are used or have been used to determine th[e] firefighter's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action." It is true that the other provisions use slightly different formulations to refer to the covered "files." But it is reasonable to interpret the three provisions in parallel, given that they appear to operate in parallel, and in the service of the same general goal — "to facilitate the officer's ability to respond to adverse comments potentially affecting the officer's employment status." (*McMahon*, *supra*, 172 Cal.App.4th at p. 1332 [describing the nearly identical provisions of the statutes applicable to public safety officers].)[2]

---

[2] Section 3255 is virtually identical to a statute applicable to public safety officers (§ 3305), and it establishes rights regarding adverse comments that are very similar to those that have been granted to teachers. (Ed. Code, § 44031, subd. (d)(1).) Consequently, cases interpreting those statutes are relevant to our interpretation of section 3255.

As we have observed, an employee's "personnel file serves as a permanent record of his employment; derogatory information placed in that record may be used against the employee long after the informant becomes unavailable. Thus the statute provides the employee with the concurrent right to place on the record material in rebuttal." (*Miller v. Chico Unified School Dist.* (1979) 24 Cal.3d 703, 713 (*Miller*).) Section 3256 requires that the employee's response to adverse comments "shall be attached to, and shall accompany, the adverse comment." (§ 3256.) Similarly, section 3256.6 permits the firefighter to request that any material in the personnel file that is unlawfully placed there or mistaken be removed or corrected, and both the request and any response by the employer "become part of the personnel file." (§ 3256.5, subds. (c), (d).) These statutes ensure that the employee's response is made part of the written record, so that any individual who accesses that record will have access to the employee's response as well as to the adverse comment. Thus, the Legislature appears to have included the phrase "any other file used for any personnel purposes by his or her employer" in section 3255 to ensure that employers will not be able to evade the statute's protections by basing personnel decisions on materials contained in files that are not designated as the agency's official personnel files. Thus, read in context, the phrase should be interpreted to encompass any written or computerized record that, although not designated a personnel file, can be used for the same purposes as a file of the sort described in section 3256.5 — as a record that may be used by the employer to make decisions about promotion, discipline, compensation, and the like.

A supervisor's log that is used solely to help its creator remember past events does not fall within the scope of that definition. Even if a supervisor uses his or her notes to help draft performance evaluations and other documents that ultimately *are* placed in a personnel file, the notes themselves are not a file

8

preserved by the employer for use in making decisions about the firefighter's employment status. Here, Culp was not plaintiff's employer. Plaintiff does not contend, and nothing in the record demonstrates, that Culp himself had the authority to take adverse disciplinary actions, such as demotions or discharge, against plaintiff on behalf of his employer, the Orange County Fire Authority. Culp's comments thus could adversely affect plaintiff only if and when they were placed in a personnel file or in some other form to which the employer — that is, those who had the authority to discipline plaintiff — had access.

Cases applying similar statutes are consistent with this conclusion. They have held that a document containing adverse comments *may* come within the disclosure requirement even if not formally entered into the official personnel file, if the document was either (1) maintained in such a manner that it would be available to those making personnel decisions in the future, or (2) was actually used by the employer in making a personnel decision, or both. For example, in *Miller, supra,* 24 Cal.3d at page 707, applying Education Code section 44031, we held that Miller, a school principal, must be permitted to review and respond to "derogatory written material compiled and maintained by a school district even though the material has not been properly placed in his personnel file" because that material had been used by the school board in its decision to transfer Miller to a teaching position. Miller's supervisor used his " 'personal notes and calendar' " to dictate a summary of " 'meetings, contacts, occurrences, and events' " (*Miller*, at p. 711) involving Miller, which were transcribed in the form of 20 memoranda that were submitted to the school board for its use in deciding whether to reassign the plaintiff from a position as principal to a teaching position. (*Miller, supra*, at p. 714.) "[T]he board received [these] confidential memoranda without first allowing plaintiff the opportunity to correct any inaccurate derogatory information contained therein." (*Ibid.*) We rejected the school board's argument that these

9

memoranda were never " 'entered or filed' " in plaintiff's personnel file, stating that an employer "may not avoid the requirements of the statute by maintaining a 'personnel file' for certain documents relating to an employee, segregating elsewhere under a different label materials which may serve as a basis for affecting the status of the employee's employment." (*Id*. at pp. 712-713.)

In *County of Riverside v. Superior Court* (2002) 27 Cal.4th 793, we held that the county was required to disclose to a police officer who had been provisionally hired, and then fired, derogatory material in a file containing the results of a background investigation the county undertook to determine whether to continue to employ him. The investigatory file was actually used in the decision to fire the officer, and it would also be available in the future "to every law enforcement agency to which [the fired officer] applies." (*Id.* at p. 803.) "We think it would elevate form over substance and also permit an end run around the Bill of Rights Act were we to hold that a law enforcement agency could avoid the Act simply by *first* terminating the employee and *then* placing its adverse comments in the employee's personnel file." (*Ibid*.)

Similarly, cases from the courts of appeal have concluded that disclosure requirements apply to adverse comments about a police officer even though they were not entered into the officer's official personnel file, and even though they had not been used in making any personnel decision, when those files might be available to persons making personnel decisions in the future. In *Sacramento Police Officers Assn. v. Venegas* (2002) 101 Cal.App.4th 916 (*Venegas*), the appellate court concluded that an index card maintained in the name of a police officer by the internal affairs department, which listed all complaints that had been made against him, was a file " 'used for . . . personnel purposes' " because it would be available to those responsible for disciplinary action. "The Legislature appears to have been concerned with the potential unfairness that may result from

10

an adverse comment that is not accompanied by punitive action and, thus, will escape the procedural protections available during administrative review of a punitive action." (*Id*. at p. 926.) The court observed that "internal affairs personnel could be influenced to a peace officer employee's detriment in a future investigation if the officer's internal affairs file or index card contains an unexplained or unrebutted adverse comment." (*Id*. at p. 929.) Furthermore, management of the officer's employing agency had access to these cards and, although complaints that had been found to be frivolous, unfounded, or exonerated could not be used for punishment or promotional purposes, they could be used to require counseling or additional training. (*Ibid*.; see Pen. Code, § 832.5, subd. (c)(2), (3); Gov. Code, § 3304, subd. (g).)

Likewise, in *Aguilar v. Johnson* (1988) 202 Cal.App.3d 241, 246, the appellate court held that a police officer was entitled to review and respond to a citizen's complaint that had been placed in a "confidential investigative file separate from appellant's personnel file." The complaint was not investigated and no action was taken on it. The court rejected the contention that uninvestigated complaints such as this one were not considered in making personnel decisions, concluding that "[t]heir placement in an officer's personnel file could potentially lead to not only adverse personnel decisions but could also result in a more severe penalty being imposed in a subsequent disciplinary proceeding. Because of this potential adverse impact on the officer, the complaint is an 'adverse comment' within the meaning of these sections." (*Id*. at pp. 249-250; see *Seligsohn v. Day* (2004) 121 Cal.App.4th 518 [requiring disclosure of records of discrimination complaints filed about officer even though they were not maintained in the officer's personnel file because they could have employment consequences in the future].) In contrast, *McMahon*, *supra*, 172 Cal.App.4th 1324, 1333, held that investigative files of a number of citizen complaints that had been made against an

11

officer, but had been determined to be unfounded, were not files used for personnel purposes because, under the department's internal regulations and Penal Code section 832.5, the materials they contained could not be used in personnel decisions.

In the present case, there is no evidence that Culp's log would be available to anyone making personnel decisions in the future. The log was available to no one other than Culp himself. Many of the potentially negative comments contained in the log were never included in any document made available to plaintiff's employer, because Culp either deemed the incidents inconsequential or resolved them in plaintiff's favor. And it is undisputed that the documents Culp prepared with the assistance of the log — plaintiff's performance evaluations and improvement plan — were disclosed to plaintiff before they were entered into his personnel file.

In concluding that section 3255 applied to Culp's log, the Court of Appeal found this case to be analogous to *Miller, supra*, 24 Cal.3d 703. *Miller*, however, is not comparable. There was no contention in *Miller* that the supervisor's " 'personal notes and calendar' " should have been disclosed to Miller. Rather, the statute was triggered when Miller's supervisor transmitted the memoranda he prepared with the assistance of those notes to the school board for its use in making a decision about Miller's employment status. Likewise, in the present case, the statute was triggered when the performance evaluation was entered into plaintiff's personnel file. *Miller* does not suggest an earlier triggering date.

We are not persuaded to the contrary by the Court of Appeal's reasoning. The Court of Appeal asserted that "[l]ike the situation in *Miller*, information *not* contained in [plaintiff's] main personnel file was presented to his employer prior to an adverse employment action by the employer. As in *Miller*, revealing the contents of the daily logs to Battalion Chief Philips denied Poole the opportunity

12

to respond to the adverse comments made known to the employer, contrary to the intent of the protective statutory enactment." This case is distinguishable from *Miller*. It is undisputed that Culp did not share his log with anyone; he merely discussed with others some of the incidents that he had observed and also recorded in his log, preliminary to completing plaintiff's evaluations and performance improvement plan. Nothing in the Act attempts to regulate a supervisor's preliminary verbal consultations with his superiors or human resources personnel prior to completing an evaluation. The statute plainly gives firefighters the right to review and file a written response to certain documents. Its language cannot be stretched to include a right to file a written response to verbal communications.

The Court of Appeal expressed concern that denying the employee access to the supervisor's daily log would frustrate the Act's purpose of "providing firefighters a right to meaningfully respond to adverse comments that may affect personnel decisions concerning the firefighter." It reasoned that although Culp could use the notes to help him remember events that he included in annual personnel evaluations, plaintiff could not be expected to remember the details of these events "months and months later when he was finally made aware of the adverse comments in the course of a yearly performance review" and his ability to correct inaccurate or incomplete statements in the review would be impeded.

The problem identified by the Court of Appeal would exist to some degree regardless of whether a supervisor kept notes or simply relied on an excellent memory. If performance reviews occur only annually, an employee may have a different recollection from his or her supervisor of events occurring many months earlier, or may not recall those events at all. Unreasonable delay in informing an employee about incidents that could affect his or her employment status might sometimes be prejudicial to the employee's ability to rebut an employer's characterization of the employee's conduct, but prejudice resulting from such

13

delay is not the issue that is addressed in section 3255.  The only timing requirement in section 3255 is the requirement that the employee have the opportunity to review the adverse comment before it is actually entered into the file.  There is a provision in the Act that addresses delay, in the context of allegations of misconduct.  (§ 3254.)  Generally, no punitive action may be taken on an allegation of misconduct unless the investigation of the allegation is completed and the employee is notified of the proposed disciplinary action within one year.  (§ 3254, subd. (d).)  Plaintiff, however, does not allege that section 3254 was violated or that there was any unreasonable delay in informing him of incidents that might cause him to receive a negative evaluation.

### III. CONCLUSION

The decision of the Court of Appeal is reversed.

**CANTIL-SAKAUYE, C. J.**

**WE CONCUR:**

**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

14

**CONCURRING OPINION BY CUÉLLAR, J.**

Today the court strikes a careful balance between firefighters' procedural protections and the realities that supervisors confront when managing public organizations. The foundation for the court's opinion is its interpretation of the Firefighters Procedural Bill of Rights Act (Gov. Code, § 3250 et seq.), and the logic of that interpretation is unassailable. I nonetheless write separately to underscore an important principle about the interpretive responsibilities that are so often at the heart of what we do. The bottom line is this: however important it is to train our attention on the plain meaning of a statutory provision we are construing, we must read that provision as we do here — in its larger context — when deciding whether its meaning is plain.

Suppose a statute is enacted with provisions similar to the ones at issue in this case. "Any public employee," the statute provides, "has a right to review personnel files that are used or have been used to determine the employee's qualifications for employment, promotion, or discipline." The question later arises whether a supervisor's hastily scrawled note on a napkin about a subordinate's performance — subsequently placed in a file folder, and then digitally copied onto a smartphone — constitutes a "personnel file," and whether the supervisor's occasional glance at the napkin or the digital file before writing a more formal evaluation constitutes "use[] to determine the employee's qualifications for employment, promotion, or discipline." That the ordinary usage and dictionary

1

definitions of terms like "file," "use," and "determine" would matter in answering these questions is beyond question.  (E.g., *Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1121 [using ordinary usage and dictionary definitions to construe "good faith"].)

What would be difficult to defend, however, is the proposition that the inquiry should end without considering what the rest of the statute tells us about the meaning of the phrase at issue.  Does a separate statutory provision imply that "personnel file" is to be construed broadly or narrowly?  Are electronic records addressed elsewhere in the statute?  If a phrase like "used to determine the employee's qualifications" is not explicitly defined in the statute, do other provisions illuminate anything relevant about how the statutory scheme understands the limits of the procedural protections it affords?

The devil, in short, is in the details.  And the details are elucidated by context — the statutory structure and the words of surrounding or related provisions.  The statute's structure and its surrounding provisions can reveal the semantic relationships that give more precise meaning to the specific text being interpreted, even if the text may have initially appeared to be unambiguous.[1]

---

[1]    In *Apple Inc. v. Superior Court* (2012) 56 Cal.4th 128, 133, for example, the court construed Civil Code section 1747.08, which provides, "no person, firm, partnership, association, or corporation that accepts credit cards" shall request or require the cardholder to provide personal identification information and cause it to be recorded.  The plaintiff argued that the plain statutory language applied to online retailers selling electronically downloadable products.  (*Id.* at pp. 136-137.)  The majority acknowledged the statute's plain meaning was consistent with the plaintiff's reading, but nonetheless rejected that construction based on the provision's structure, context, and purpose.  (*Id.* at pp. 137-139.)  In *California School Employees Association v. Governing Board* (1994) 8 Cal.4th 333, 335-336, the court construed Education Code section 88203, which provides that classified community college employees are entitled to paid holidays including "every day appointed by the President . . . for a public fast, thanksgiving, or holiday . . . ."

*(footnote continued on next page)*

(*Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114 [interpreting the meaning of a provision " 'is to discern the sense of the statute, and therefore its words, *in the legal and broader culture'* "].)  And context also tells us more about the statute's underlying purpose than we might glean from reading the text of a statutory provision in isolation.  (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276 (*Horwich*) [explaining that understanding the Legislature's intended purpose requires consideration of a statute's structure and context].)

The majority's framework for interpreting Government Code section 3255 appears very much in accord with these concerns.  (See maj. opn., *ante*, at pp. 5-7.)  That is, this court's approach to interpreting statutes emphasizes the primacy of the Legislature's intended purpose.  (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332 ["In interpreting a statute, our primary goal is to determine and give effect to the underlying purpose of the law"].)  Giving effect to that purpose requires us to start with a statute's text and to train our focus on the language rather than extrinsic interpretive aids such as legislative history when there is not sufficient textual ambiguity to warrant the use of such material.  (Maj. opn., *ante*, at p. 5; *Ennabe v. Manosa* (2014) 58 Cal.4th 697, 713; *Hsu v. Abbara* (1995) 9

---

*(footnote continued from previous page)*

The plaintiffs argued that a 1991 presidential proclamation designating "National Days of Thanksgiving" to celebrate the end of the Persian Gulf War triggered paid holidays under the statute.  (*Id.* at p. 336.)  The court concluded that the plaintiffs' interpretation was consistent with clear and unambiguous statutory language, but it nonetheless declined to adopt that construction given what the rest of the statute conveyed about the Legislature's intended purpose.  (*Id.* at pp. 340-342; see *Cal. Charter Schools Assoc. v. Los Angeles Unified School District* (2015) 60 Cal.4th 1221, 1237-1238 [declining to adopt plain meaning construction in light of the regulatory context]; *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 26-27 [rejecting "plain language" construction because it was contrary to the Legislature's intended purpose].)

Cal.4th 863, 871.)  But, as the majority opinion rightly acknowledges (maj. opn., *ante*, at p. 6), the task of interpreting the relevant statutory text plainly includes consideration of the statute's structure and the light it sheds on the Legislature's intended purpose.  (*Martin v. Wells Fargo Bank* (2001) 91 Cal.App.4th 489, 494 [construing statute in light of its text and structure]; see *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 ["the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible"].)

Moreover, our ability to determine whether an apparently plain reading of a statute's text produces an absurd result — a question we cannot avoid even if the relevant text of a statutory provision seems clear on its face — depends on some engagement with what we take to be the substantive goals the Legislature plausibly sought to advance.  Thus, although we often say a statute's "plain meaning governs" when there is no ambiguity (e.g., *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838), it would be problematic if our use of this formulation were interpreted to mean that an examination of a statute's context is warranted only when there is ambiguity on a statute's face — and I do not read the majority opinion to so suggest.  To the contrary, it recognizes that, along with the text of the statutory provision directly at issue, structure and context can be critical in determining whether ambiguity exists and in discerning the Legislature's intended purpose.  (Maj. opn., *ante*, at p. 6; *Horwich*, *supra*, 21 Cal.4th at p. 276; Manning, *What Divides Textualists from Purposivists?* (2006) 106 Colum. L.Rev. 70, 84 [observing that even textualists "recognize that the relevant context for a statutory text includes the mischiefs the authors were addressing" given that "speakers use language purposively"].)

4

There is a certain simplicity in the idea that our interpretive task ends if the meaning of a pivotal statutory phrase is "plain." (E.g., *People v. Cornett* (2012) 53 Cal.4th 1261, 1265.) And indeed, giving effect to a statute's text and the intended purpose it implies is precisely what anchors the court's role in a system of separated powers. (See *Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 672-673 (conc. opn. of Mosk, J.).) But understanding whether that meaning is plain is not a project well served by reading statutory provisions as isolated fragments. (*Id.* at p. 673 ["To seek the meaning of a statute is not simply to look up dictionary definitions and then stitch together the results."]) Instead our task is to consider the words of the text as part of a larger statutory project, so we can better discern not only how to resolve ambiguity but whether ambiguity exists in the first place. (*People v. Johnson* (2015) 61 Cal.4th 674, 682 [explaining that we construe a provision's words in the context of the statutory scheme to determine meaning and also whether the language is ambiguous].) Which is exactly what the court has done in this case.

**CUÉLLAR, J.**

5

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Poole v. Orange County Fire Authority

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 221 Cal.App.4th 155
**Rehearing Granted**

_____

**Opinion No.** S215300
**Date Filed:** August 24, 2015

_____

**Court:** Superior
**County:** Orange
**Judge:** Geoffrey T. Glass

_____

**Counsel:**

Silver, Hadden, Silver, Wexler & Levine, Silver, Hadden, Silver & Levine, Richard A. Levine and Brian P. Ross for Plaintiffs and Appellants.

Woodley & McGillivary, Thomas A. Woodley, Diana J. Nobile; Wylie, McBride Platten & Renner and Mark S. Renner for International Association of Fire Fighters as Amicus Curiae on behalf of Plaintiffs and Appellants.

Carroll, Burdick & McDonough, Gary M. Messing, Jason H. Jasmine and Gregg McLean Adam for CAL Fire Local 2881, California Correctional Peace Officers Association and Peace Officers' Research Association of California Legal Defense Fund as Amici Curiae on behalf of Plaintiffs and Appellants.

Haight Brown & Bonesteel, Kevin M. Osterberg, Blythe Golay; Woodruff, Spradlin & Smart, Barbara Raileaunu; Dentons US and Jules S. Zeman for Defendant and Respondent.

Michael N. Feuer, City Attorney (Los Angeles), Janis Levart Barquist and Blithe Smith Bock, Deputy City Attorneys, for League of California Cities and California State Association of Counties as Amici Curiae on behalf or Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Richard A. Levine
Silver, Hadden, Silver & Levine
P.O. Box 2161
Santa Monica, CA  90407-2161
(310) 393-1486

Jules S. Zeman
Dentons US
300 South Grand Avenue, 14th Floor
Los Angeles, CA  90071
(213) 688-1000

Blithe Smith Bock
Deputy City Attorney
200 North Main Street, Sixth Floor
Los Angeles, CA  90012
(213) 978-6936