Filed 11/23/22  Alley v. Office of Law Enforcement Support CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ANDREA ALLEY,<br><br>    Plaintiff and Appellant,<br><br>  v.<br><br>OFFICE OF LAW ENFORCEMENT SUPPORT,<br><br>    Defendant and Respondent. | C093334<br><br>(Super. Ct. No. 34201700206137CUOEGDS) |

Plaintiff Andrea Alley appeals from a judgment entered in favor of her former employer, the Office of Law Enforcement Support (OLES) after a bench trial on her claim under the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.).[1]  Alley has failed to establish any error in the trial court's conclusion that she did not prove OLES violated section 3305.  Therefore, we will affirm the judgment.

---

[1] Undesignated statutory references are to the Government Code.

1

# I. BACKGROUND

A.    *Statutory Background*

Section 3305 is one of three neighboring provisions that concern the rights of public safety officers with respect to their personnel files. (See *Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1385 (*Poole*) [describing parallel provisions of the Fire Fighters Procedural Bill of Rights Act (§ 3250 et seq.)].) OLES does not challenge the trial court's conclusion that Alley's employment with OLES made her a peace officer within the meaning of these statutes. Section 3305 provides, in pertinent part: "No public safety officer shall have any comment adverse to his interest entered in his personnel file, or any other file used for any personnel purposes by his employer, without the public safety officer having first read and signed the instrument containing the adverse comment indicating he is aware of such comment, except that such entry may be made if after reading such instrument the public safety officer refuses to sign it."

Section 3306 explains that a public safety officer has 30 days "to file a written response to any adverse comment entered in his personnel file. Such written response shall be attached to, and shall accompany, the adverse comment." Section 3306.5 requires an employer to permit an officer "to inspect personnel files that are used or have been used to determine that officer's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action." (§ 3306.5, subd. (a).) If, after reviewing the file, "the officer believes that any portion of the material is mistakenly or unlawfully placed in the file, the officer may request, in writing, that the mistaken or unlawful portion be corrected or deleted." (*Id*., subd. (c).) The employer must respond to the request in writing, and both the request and the response become part of the personnel file. (*Id*., subds. (c), (d).)

B.    *Factual Background*

OLES was created by the Legislature in 2015 to serve as a watchdog agency within the California Health and Human Services Agency to monitor its internal

2

investigations of employee misconduct taking place at its state psychiatric hospitals and developmental centers. (See Welf. & Inst. Code, § 4023.6, subd. (a).) OLES also conducts its own investigations. In December 2015, Alley began employment as a Supervising Special Investigator II with OLES. Her probationary period was for one year. Alley reported directly to the Division Chief, Ken Baird. Baird reported directly to an undersecretary of the California Health and Human Services Agency.

Alley's job was to supervise the central intake process of complaints. Central intake had recurring problems, including failing to obtain all facilities' daily logs, incomplete case opening documents, sending duplicative document requests, and communication errors. Baird received complaints about intake from both inside and outside of OLES.

Baird personally noticed management problems in the intake unit. He met with Alley several times to address these concerns and her performance.

At some point, Alley's assistant began putting documents in a "blue folder" that was left in Baird's office. Baird was frequently out of the office. According to Baird, he did not look at the "blue folder," but it contained documents relating to intake problems. Baird did not ask Alley's assistant to create the "blue folder."

In April, Baird assigned another Supervising Special Investigator II to prepare an outline for Alley's evaluation. Baird began forwarding the other supervisor emails reflecting Alley's performance. The emails were sent individually and sporadically over a period of time. Ultimately, Baird did not complete an evaluation for Alley.

In April or early May 2016, Baird met with the California Health and Human Services Agency's Chief of Administrative Services and staff counsel to discuss Alley's performance. Based on his own observations of Alley's performance and feedback he received from others, Baird concluded additional counseling or training would not resolve Alley's performance deficiencies and OLES needed to reject her during probation.

3

A California Health and Human Services Agency Staff Services Manager was assigned to prepare a written notice of rejection during probation. To provide documentation for the rejection notice, Baird searched his Outlook inbox " 'for key words associated with Andrea Alley' " and forwarded them to the Staff Services Manager. He also gave the "blue folder" to the Staff Services Manager. During this time, Baird moved emails related to Alley into an already-existing Outlook folder possibly named "personnel" or "personal" that was used for a wide range of information, including budget information and personnel requests. The folder had been created by Baird in September 2015, prior to Alley's arrival.

The notice of rejection was served on Alley on May 12, 2016. The notice detailed the reasons for Alley's rejection and also attached almost 140 pages of supporting documents.

In 2017, Alley filed this lawsuit, alleging OLES: (1) violated section 3305; and (2) discriminated against her based on age. The trial court granted OLES's motion for summary adjudication of the age discrimination claim. Alley's section 3305 claim proceeded to a bench trial.

Ultimately, the trial court issued a final statement of decision concluding Alley had not established OLES violated section 3305. The court also found Alley failed to prove any damages or injuries sustained were caused by the alleged violation.

Alley filed a timely appeal from the trial court's entry of judgment.

## II. DISCUSSION

A. *Standard of Review*

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all

4

reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)

B.     *Poole*

As previously set forth, section 3305 applies to any adverse comment "entered in [an officer's] personnel file, or any other file used for any personnel purposes by his employer." The evidence established Baird never entered any of the documents at issue in Alley's personnel file. Thus, this case turns on the potential applicability of the phrase "any other file used for any personnel purposes by his employer."

In *Poole, supra*, 61 Cal.4th 1378, our Supreme Court construed the meaning of the phrase "used for any personnel purposes by his or her employer" in the context of section 3255, which is part of the Firefighters Procedural Bill of Rights Act and is "virtually identical" to section 3305. (*Poole, supra*, pp. 1384, 1386, fn. 2.) At issue in *Poole* was a daily log kept by plaintiff Steve Poole's supervisor, Captain Culp, regarding each of the employees he supervised. (*Id.* at p. 1382.) Culp used the log as a reference in preparing annual reviews and performance evaluations. (*Ibid.*)

Our Supreme Court explained, "The statutory language referring to a file 'used for any personnel purposes by his or her employer' might, in isolation, be read broadly enough to include Culp's log, which he used in the performance of his duties as a supervisor. But critical to an understanding of section 3255 is its statutory context. [Citations.] Reading the statutory language in context convinces us that the Legislature did not intend section 3255 to be read so broadly." (*Poole, supra*, 61 Cal.4th at p. 1385.)

*Poole* explained that section 3256.5—which is the provision of the Firefighters Procedural Bill of Rights Act that is functionally identical to section 3306.5—makes clear "the Legislature was not concerned with any and all files that might in some sense be connected with personnel matters; the Legislature was, rather, specifically concerned with 'personnel files that are used or have been used to determine th[e] firefighter's

5

qualifications for employment, promotion, additional compensation, or termination or other disciplinary action.' " (*Poole, supra*, 61 Cal.4th at pp. 1385-1386.)

Further, the phrase "used for any personnel purposes by his or her employer" "should be interpreted to encompass any written or computerized record that, although not designated a personnel file, can be used for the same purposes as a file of the sort described in section 3256.5—as a record that may be used by the employer to make decisions about promotion, discipline, compensation, and the like." (*Poole, supra*, 61 Cal.4th at p. 1386.) The log at issue in *Poole* offers one illustration of what is not such a record: "A supervisor's log that is used solely to help its creator remember past events does not fall within the scope of that definition. Even if a supervisor uses his or her notes to help draft performance evaluations and other documents that ultimately *are* placed in a personnel file, the notes themselves are not a file preserved by the employer for use in making decisions about the firefighter's employment status." (*Id*. at pp. 1386-1387.) Our Supreme Court noted Culp was not the employer and he did not have the authority to take adverse disciplinary actions: "Culp's comments thus could adversely affect plaintiff only if and when they were placed in a personnel file or in some other form to which the employer—that is, those who had the authority to discipline plaintiff—had access." (*Id*. at p. 1387.) The court further explained that "[c]ases applying similar statutes are consistent with this conclusion. They have held that a document containing adverse comments *may* come within the disclosure requirement even if not formally entered into the official personnel file, if the document was either (1) maintained in such a manner that it would be available to those making personnel decisions in the future, or (2) was actually used by the employer in making a personnel decision, or both." (*Ibid*.)

*C.*     *Alley Did Not Establish a Violation of Section 3305*

The trial court explained Alley argued the email subfolder maintained by Baird and the "blue folder" constitute files subject to section 3305.[2] On appeal, Alley argues the supporting documentation for her rejection letter was contained "in at least one 'file used for any personnel purposes' by OLES." The trial court found this supporting documentation was provided by Baird and others. Alley does not discuss or cite any particular document among those that were attached to the notice of rejection.

*1.*     *The Trial Court Did Not Require Alley to Prove Intent or Purpose*

The trial court explained the documents attached to the rejection letter "related to the operations of the intake unit and the frustration that employees and shareholders had with how cases were handled in the intake unit. Although most of these documents are critical of the intake unit and a few critical of [Alley], none of these documents were prepared for personnel purposes or prepared for the purpose of taking adverse employment action against [Alley]. The vast majority of the emails involved process problems in intake and criticism was not restricted to [Alley]. . . . The nature of the

---

[2] On appeal, Alley argues the trial court overlooked "the file assembled by" the other supervising special investigator to evaluate Alley's performance and contends there was no dispute this file was also used as support for rejecting her. Alley does not provide a citation indicating she raised the issue to the trial court. She did not object to the proposed statement of decision's characterization of the issues she raised. "The parties must call the court's attention to issues they deem relevant." (*North Coast Business Park v. Nielsen Construction Co*. (1993) 17 Cal.App.4th 22, 28.) In particular, " '[a] party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing party.' " (*Id*. at p. 29.) Here, there was no finding that the emails forwarded to the other supervising special investigator were used to support Alley's rejection notice. The citations she provides suggest there was overlap between these emails and what was attached to the rejection notice, but do not support the idea this was because the supervising special investigator forwarded them. Nonetheless, as we will discuss, even if the issue was not forfeited, Alley has not demonstrated the trial court erred in concluding she did not establish a violation of section 3305.

comments contained in these documents are designed to either bring attention to process issues in the intake unit or suggestions on improving the process and procedures in handling the intake of reports. There is no evidence that any entries that can be construed as 'adverse' to [Alley] were made with the intent or purpose that the comment would be used for 'personnel' purposes. The 'adverse' comments appear to have been made for the purpose of improving the intake process." Alley incorrectly asserts that the trial court required her to prove intent or purpose. The trial court made a factual finding that was relevant to its analysis. In *County of Riverside v. Superior Court* (2002) 27 Cal.4th 793, 802 our Supreme Court concluded that a background investigation file was a "file used for any personnel purposes" under section 3305 after explaining that the file's "very purpose" was to " ' "serve as a basis for affecting the status of the employee's employment." ' " It was thus relevant to the trial court's analysis in this proceeding that the files at issue lacked the same purpose.

2.      *The Trial Court Did Not Misread the Evidence*

Alley argues the court misread the evidence in the record. First, Alley challenges the trial court's statements that: (1) according to her assistant, her assistant never discussed the contents of the "blue folder" with Baird; and (2) Baird did not review the contents of the "blue folder." We find no error. The trial court asked Alley's assistant if she ever discussed the file with Baird: "In other words, this is the file. Please keep this for communications. This involves intake material. Keep this. There was no discussion about the creation of the file itself." Alley's assistant agreed there had been no discussion. As to whether Baird reviewed the contents of the "blue folder," Alley cites no evidence clarifying whether Baird opened the actual folder as opposed to reading the emails it contained when they were emailed to him or hearing about the issues verbally from Alley's assistant.

Alley also challenges the trial court's statement that the documents attached to the rejection notice "were not generated or retained for personnel action purposes but for the

purpose of managing and improving an internal operation of OLES and addressing performance issues on the part of [Alley]." Alley argues this statement was a contradiction because addressing performance issues is a personnel action. To support this assertion, she cites authorities discussing performance evaluations. (E.g., *Poole, supra*, 61 Cal.4th at p. 1383 [noting plaintiff had opportunity to review all of his performance evaluations, which were placed in personnel file]; *Miller v. Chico Unified School Dist.* (1979) 24 Cal.3d 703, 717 [discussing annual evaluations]; *Versaci v. Superior Court* (2005) 127 Cal.App.4th 805, 819 [discussing employee performance evaluations].) Here, a performance evaluation was never drafted. Further, the trial court's reasoning was clear in context. The court found the documents were not generated for the purpose of making a personnel decision but for improving operations. The court continued, "There is no evidence that Chief Baird maintained either the 'blue folder' or the Outlook subfolder for a personnel related purpose. The fact that Chief Baird tasked [another Supervising Special Investigator] with preparing Plaintiff's probationary review report suggests that these documents were not retained or 'entered' into a file for the purpose of taking employment action but were used for the appropriate purpose of drafting a performance evaluation as permitted under *Poole*." Alley argues these comments misinterpreted *Poole*. We are unpersuaded. The record supports the trial court's conclusion that the files were akin to the log in *Poole*. The fact Baird did not use the contents of either file to draft a performance review and delegated the task of drafting an outline to another supervisor does not alter that conclusion.

*3. The Trial Court Properly Applied the Relevant Case Law*

Alley argues the trial court misconstrued the relevant authorities regarding what is needed to trigger protection under section 3305. We disagree. The court found significant that the documents themselves were not sufficient to be used to make a personnel decision. Indeed, the evidence did not establish that the decision to reject Alley was made based on any of these documents. Rather, the documents were

9

eventually forwarded along to be used after the decision had been made as supporting documents for the notice of rejection. Alley argues OLES was required to show her these documents before the notice of rejection could be prepared. However, she failed to establish that before they were attached to the notice of rejection, any challenged document was part of or itself a "file used for any personnel purposes." (§ 3305.) At most, the documents were used in a manner analogous to the log in *Poole* and did not qualify for protection under section 3305.

Alley has identified no authority construing section 3305 or another similar statute as broadly as she applies it here. The trial court observed that "[a]ll of the cases cited by Plaintiff involve situations where the agency or employer had a clearly define[d] organizational structure where personnel and human resources are handled by someone other than the supervisor." Alley argues, unhelpfully, that none of these authorities suggest these facts are dispositive. The trial court did not say they were. Thus, the court's statement was not erroneous. Further, the court's ruling was consistent with *Poole*. In it, our Supreme Court made clear that section 3305 should not be applied to "any and all files that might in some sense be connected with personnel matters." (*Poole, supra*, 61 Cal.4th at p. 1385.) The trial court's determination was based on the fact the documents were not maintained with a reasonable expectation that they would be used for personnel purposes. Section 3305 includes any record that "may be used by the employer to make decisions about promotion, discipline, compensation, and the like." (*Poole, supra*, at p. 1386.) Alley has failed to demonstrate the trial court erred in determining the challenged documents were not such a record, and she did not prove OLES violated section 3305. In light of this conclusion, we need not address Alley's arguments pertaining to the court's conclusion that, even if she had established a violation of section 3305, she failed to prove any damages or injuries sustained were related to the violation.

## III.  DISPOSITION

The judgment is affirmed.  Respondent Office of Law Enforcement Support shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

RENNER, J.

We concur:

/S/

DUARTE, Acting P. J.

/S/

EARL, J.