Filed 5/12/16  White v. County of Los Angeles CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SUSAN WHITE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>    Defendants and Appellants. | B254503<br><br>(Los Angeles County<br>Super. Ct. No. BS140506) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Luis A. Lavin, Judge.  Affirmed.

Mark J. Saladino, County Counsel, Joyce Aiello, Assistant County Counsel, Julie A. Dixon, Deputy County Counsel; Housman & Sosa, Jeffrey M. Hausman, and Larry D. Stratton for Defendants and Appellants.

Green & Shinee, Richard A. Shinee, and Audra C. Call for Plaintiff and Respondent.

_____

Under Government Code section 3305, which is part of the Public Safety Officers Procedural Bill of Rights Act (POBRA), a public safety officer has the right to review and respond to "any comment adverse to his interest entered in his personnel file, or any other file used for any personnel purposes by his employer." Respondent Susan White, a senior district attorney investigator, filed this mandamus action against appellant County of Los Angeles and other entities and individuals,[1] alleging that they violated the POBRA by failing to disclose memoranda that White's supervisors had prepared and submitted to their superiors regarding their concerns about White's psychological condition and fitness for duty. The trial court concluded that the County violated Government Code section 3305 in failing to disclose the memoranda and issued a writ of mandate that, among other directives, enjoined the County from using the memoranda as a basis for ordering White to undergo a medical reevaluation to assess her fitness for duty. The trial court also awarded attorney's fees to White under Code of Civil Procedure section 1021.5. The County challenges both orders on appeal. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

### I. White's Employment as a Senior District Attorney Investigator

White was employed as a senior district attorney investigator for the Los Angeles County District Attorney's Office (DA) and was assigned to the DA's Bureau of Investigation in the Major Fraud Section. In that capacity, White was a peace officer pursuant to Penal Code section 830.1. The essential functions of her position included personally serving arrest warrants, making arrests, interrogating suspects, and booking prisoners. During the relevant time period, White's direct supervisor was Terisa Carver,

---

[1] For the sake of convenience, we shall collectively refer to the defendants named in White's petition for writ of mandate as "the County."

[2] White previously filed a petition for writ of mandate against the County, which was the subject of an appeal before Division Three of this court. (*White v. County of Los Angeles* (2014) 225 Cal.App.4th 690 (*White I*).) A portion of the factual and procedural background in the present appeal is taken from this prior opinion.

the Supervising Investigator in the Major Fraud Section. Carver in turn reported to Kris Carter, a Lieutenant in the Major Fraud Section and White's second-level supervisor.

In late 2009, White began experiencing emotional difficulties. She was observed by both her supervisors and coworkers acting erratically in the workplace, exhibiting dramatic emotional highs and lows. Beginning in April 2010, Carver and Carter documented their observations and concerns about White's workplace behavior in a series of confidential memoranda addressed to their superiors—Alan Jarvis, Captain of the Fraud and Corporate Division, and Dominick Rivetti, Chief of the DA's Bureau of Investigation.[3] The memoranda were never placed in White's personnel file, and she had no knowledge of their existence at the time they were prepared by her supervisors and submitted to upper management at the DA's Bureau of Investigation.

The memoranda set forth specific instances where White had exhibited poor judgment or unprofessional conduct in the performance of her job duties. For instance, the memoranda described two incidents where White made poor tactical decisions during the execution of a search warrant by suddenly changing her position without warning to her team members, which jeopardized her safety. The memoranda also described an incident where White lost her composure and acted unprofessionally while testifying at trial in a criminal case, and was later accused by the defendant's attorneys of committing perjury. In addition, the memoranda detailed many of the personal observations made by White's supervisors and coworkers about her behavior. White's coworkers reported that they had observed her on several occasions crying, shaking uncontrollably, slurring her speech, and appearing to be under the influence of a controlled substance. Carver and Carter recounted instances where White reported to work with unexplained physical injuries, exhibited drastic mood swings, and expressed difficulty coping with problems in

---

[3]     These memoranda consisted of the following: (1) an April 21, 2010 memorandum from Carter to Jarvis, (2) an April 22, 2010 memorandum from Carter to Rivetti, (3) an April 22, 2010 memorandum from Carver to Rivetti, (4) a May 7, 2010 memorandum from Carter to Rivetti, and (5) a May 31, 2011 memorandum from Carver to Rivetti.

3

her personal life. In these memoranda, Carver and Carter advised their superiors that they believed White was experiencing emotional or psychological issues that were interfering with her ability to perform her job duties, and that they were concerned White could pose a risk of harm to herself or others.

## II. The DA's Efforts to Require White to Appear for a Medical Reevaluation

In May 2011, White went on a medical leave of absence under the federal Family Care and Medical Leave Act (FMLA; 29 U.S.C. § 2601 et seq.), which grants eligible employees 12 weeks of leave due to a serious health condition that renders the employee unable to perform the functions of the job. Upon the expiration of White's FMLA leave, she was placed on an authorized unpaid medical leave at the request of her treating physician. On September 7, 2011, after White's physician released her to return to work, White was placed on a paid administrative leave pending an internal investigation into allegations of misconduct. The DA later sought to compel White to submit to a medical reevaluation regarding her fitness for duty.

Pursuant to Los Angeles County Civil Service Rule 9.07, the DA was required to obtain the consent of the Occupational Health Programs (OHP), a division within the County's Chief Executive Office, before it could order White to undergo a medical reevaluation. On December 7, 2011, George Mueller, Assistant Chief of the Bureau of Investigation, submitted a written request to Dr. Sepideh Souris, Chief of Psychological Services at OHP, seeking OHP's consent for an order compelling White to appear for a medical reevaluation. According to Mueller, beginning in early 2010, he became aware of concerns about White's emotional and psychological condition, including incidents of erratic behavior, which he believed affected whether White could safely and effectively perform her job duties. Mueller specifically became aware of the memoranda that Carver and Carter had submitted to their superiors about White's behavior. After consulting with Chief Rivetti, Mueller decided to seek a medical reevaluation of White because he was concerned whether White could safely discharge her duties as a peace officer based on the information he had received. In his request to OHP, Mueller did not attach copies

4

of the memoranda prepared by White's supervisors. However, in a seven-page letter, Mueller provided a detailed account of White's workplace behavior over the prior two years, including an almost verbatim description of many of the incidents documented by White's supervisors in their memoranda.

After reviewing Mueller's December 7, 2011 letter, Dr. Souris consented to the DA's request for an order compelling White to appear for a medical reevaluation. According to Dr. Souris, Mueller's letter detailed the factual basis for the OHP's decision to provide consent for the order. The DA thereafter ordered White to appear for a medical reevaluation scheduled for January 27, 2012, and advised her that if she failed to appear, it might be cause for disciplinary action. When White did not appear for the appointment, the DA informed her that her failure to appear was an act of insubordination that subjected her to discipline and that her appointment had been rescheduled for February 28, 2012. The DA again advised White that a failure to appear might be cause for disciplinary action. White did not, however, intend to appear, believing that the medical reevaluation had been ordered in violation of her rights under the FMLA.

## III. White Files an Action Under the FMLA Based on the County's Order for a Medical Reevaluation

On February 23, 2012, White filed the action in *White I*, seeking injunctive relief or writ of mandate to prohibit the County from requiring her to appear for the medical reevaluation, or from disciplining her for failing to appear. White argued that ordering her to submit to a medical reevaluation violated her right under the FMLA to be restored to employment based solely on her physician's certification that she was able to return to work. In May 2012, the County filed an opposition to White's request for a permanent injunction and writ of mandate, and supported its opposition with declarations from several individuals, including Carver, Carter, Rivetti, and Mueller. The County also attached as exhibits to the declarations copies of the memoranda that Carver and Carter had prepared and submitted to their superiors about White's behavior. Upon receipt of the County's opposition, White's counsel provided the documents to White. This was the

5

first time that White saw the memoranda from her supervisors or became aware of the existence of such documents.

The trial court in *White I* issued a permanent injunction and writ of mandate prohibiting the County from requiring a medical reevaluation of White based on her conduct prior to September 7, 2011, or from charging White with insubordination for failing to comply with the reevaluation. The trial court also awarded attorney's fees to White under the FMLA. The County filed an appeal in *White I*.

In a published decision, the Division Three of this court reversed the judgment and order for attorney's fees in favor of White, and remanded the matter to the trial court with directions to dissolve the injunction, discharge the writ of mandate, and enter judgment in favor of the County. (*White I*, *supra*, 225 Cal.App.4th at p. 708.) The court held that, once an employee has been returned to work as required by the FMLA, an employer is not prohibited by the FMLA from requiring a medical reevaluation related to the serious health condition for which the employee was granted FMLA leave. (*Id.* at p. 701.) The court concluded that, because White was in fact returned to work and then placed on a paid administrative leave, the County did not violate the FMLA in requiring White to submit to a medical reevaluation regarding her fitness for duty. (*Id*. at p. 707.)

## IV.    White Files The Present Action Under The POBRA Based on the County's Failure to Disclose Adverse Comments in the Memoranda

On November 21, 2012, White filed the present action against the County, seeking a writ of mandate and other relief arising out of the County's use of the five memoranda prepared by Carver and Carter and the December 7, 2011 letter from Mueller to OHP. In a first amended petition, White alleged that the County's reliance on the memoranda as a basis for requiring her to submit to a medical reevaluation violated Government Code sections 3305, 3306, and 3306.5 because White was never shown the documents or given an opportunity to respond to their contents. White sought injunctive relief under Government Code section 3309.5 and issuance of a writ of mandate under Code of Civil Procedure section 1085, and specifically requested that the County be ordered to delete

6

the documents from any file used for personnel purposes and to refrain from using any adverse comments in the documents for any purpose against her. White also sought statutory penalties for each adverse comment in the documents under Government Code section 3309.5, and requested attorney's fees under Government Code section 3309.5 and Code of Civil Procedure section 1021.5.

On October 21, 2013, the County filed an opposition to White's petition for writ of mandate. Among other arguments, the County contended that the only relief afforded under the relevant provisions of the POBRA was the right to obtain disclosure of certain documents and an opportunity to place responses in the personnel file, and that the documents at issue in this case were disclosed to White in the prior action and White failed to avail herself of the opportunity to comment on them. The County also argued that the POBRA does not require disclosure of internal confidential communications among an employee's supervisors about the need for the employee to undergo a medical reevaluation, and that the documents in this case were not used to determine White's qualifications for employment because OHP, the agency responsible for conducting a medical reevaluation, was never provided with any of the documents.

In a supporting declaration, Mueller stated that the memoranda were prepared by Carver and Carter as part of their supervisory responsibilities solely "to communicate the important issue of Ms. White's psychological status and condition to upper management." Mueller also stated that the memoranda "were used as the factual basis for the DA's request to [OHP], seeking OHP's consent for White's reevaluation," and "were an integral part of the DA's request." Mueller asserted that the memoranda were never placed in White's personnel file, but rather were retained in the "Supervisor's Working File, which was not used, and was not intended for use, in determining Ms. White's qualifications for employment, promotion, additional compensation or termination, or any disciplinary action."[4] Mueller further noted that, since White became

---

[4]    The declarations submitted by Carver, Carter, Rivetti, and Mueller in *White I* similarly stated the memoranda were prepared solely for the purpose of communicating

7

aware of the memoranda during the prior action, she had not made any request to review the documents or to respond to any comments contained therein.

Dr. Souris also submitted a declaration supporting the County's opposition to the petition for writ of mandate. Dr. Souris explained that, in determining whether a peace officer meets the necessary psychological standards of the job position, "OHP considers the department's request for reevaluation such as that sent by Mr. Mueller as one part of its evaluation," but OHP "makes an independent determination, and it includes the review by its own medical professionals." Dr. Souris also stated that, once a psychological reevaluation is completed, OHP "will recommend to the department a variety of possible actions," which "are based solely upon the result of the reevaluation, and may for instance include no action, modification of assignment, or reassignment." Dr. Souris confirmed that Mueller's letter requesting consent for a medical reevaluation of White did not include any of the memoranda prepared by her supervisors, and that OHP did not receive or consider such documents in consenting to the reevaluation.

On December 3, 2013, the trial court granted White's petition for writ of mandate. The court concluded that the County had violated Government Code section 3305 in failing to disclose the memoranda to White because the documents contained adverse comments about White's fitness for duty and were used for personnel purposes when the DA requested OHP's consent to ordering a medical reevaluation for White. The court found that the fact that OHP consents to and conducts the medical reevaluation of an employee did not affect the application of the statute because the DA was the entity seeking to require White to submit to a medical reevaluation, and the memoranda formed the factual basis of the DA's request to OHP for such consent. The court further concluded that White's available remedies were not limited to reviewing and responding to adverse comments in the memoranda within 30 days of their disclosure, and that White

concerns about White's psychological condition to superiors within the DA's Bureau of Investigation, and that the memoranda were never used, or intended to be used, "to determine Ms. White's qualifications for employment, promotion, additional compensation, termination, or disciplinary action."

8

was entitled to seek injunctive relief under Government Code section 3309.5 to remedy the violation and to prevent future violations of a similar nature. The court concluded, however, that White was not entitled to recover statutory penalties or attorney's fees under Government Code section 3309.5 because she had not established that the County acted with malice in creating and maintaining the memoranda.

Based on its findings and conclusions, the trial court issued a peremptory writ of mandate that (1) ordered the County to allow White to note her agreement or objection to the comments and memoranda at issue; (2) enjoined the County from requiring White to undergo a future medical reevaluation based on the challenged adverse comments and memoranda or White's responses to them; and (3) enjoined the County from retaliating against White based on the adverse comments and memoranda or White's responses to them, unless the responses reflect a danger to White, the County, or members of the public. The court denied White's request for statutory penalties and attorney's fees under Government Code section 3309.5. The court also denied the request for attorney's fees under Code of Civil Procedure section 1021.5, but without prejudice to a noticed motion for attorney's fees being made after judgment was entered.

On February 24, 2014, following the entry of judgment, White filed a motion for attorney's fees under Code of Civil Procedure section 1021.5. White sought attorney's fees in the amount of $31,625, asserting that the writ proceeding arose directly from White's exercise of her rights under the POBRA, that White had prevailed on the merits of the action, and that the trial court's ruling in the action had conferred a significant benefit on the general public or a large class of persons. On May 13, 2014, the trial court granted White's motion for attorney's fees. The court found that the action had enforced an important right affecting the public interest because it required interpretation of the POBRA and the Los Angeles County Civil Service Rules regarding the County's duty to disclose documents that may serve as a basis for affecting a police officer's employment status, which was a matter of concern to all peace officers subject to the POBRA or discipline under the County's civil service rules. The trial court awarded White $30,845 in attorney's fees and $812.50 in costs.

9

The County filed an appeal from the judgment entered in White's favor on her petition for writ of mandate, and an appeal from the post-judgment order awarding White attorney's fees and costs.[5] On July 8, 2014, during the pendency of the appeals, White voluntarily resigned from her employment with the County.

## DISCUSSION

On appeal, the County challenges the trial court's order granting White's petition for writ of mandate, arguing that the County did not violate the POBRA in failing to disclose the memoranda concerning White's fitness for duty and that the injunctive relief ordered by the trial court was vague and improper. The County also challenges the trial court's order awarding attorney's fees to White under Code of Civil Procedure section 1021.5, asserting that White failed to satisfy the criteria for attorney's fees under the statute and the amount of the award was excessive.

## I.      Mootness

As a preliminary matter, we address the County's argument that its appeal from the judgment entered in White's favor has been rendered moot because White voluntarily resigned from her employment with the County while the appeal was pending. The County has not requested that its appeal be dismissed, but rather urges us to reverse the judgment and remand the matter to the trial court with directions to dismiss the action filed by White. White, on the other hand, asserts that the appeal should not be considered moot because the issues raised in the action concern matters of public interest that are likely to recur. White also contends that, if the matter is moot, the proper remedy would be to dismiss the County's appeal, not the underlying action.

As a general rule, an appellate court only decides actual controversies. It is not the function of the appellate court to render opinions "'"'upon moot questions or abstract propositions, or . . . declare principles or rules of law which cannot affect the matter in

_____

[5]      At the County's request, these appeals have been consolidated.

10

issue in the case before it.'"'"" (*Giles v. Horn* (2002) 100 Cal.App.4th 206, 227.) ""'"'It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.'" [Citations.]'" (*Ibid*.; see also *Lincoln Place Tenants Assn. v. City of Los Angeles* (2007) 155 Cal.App.4th 425, 454 ["case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief"].)

The County filed appeals from two separate orders: (1) the judgment entered in White's favor on the petition for writ of mandate; and (2) the post-judgment award of attorney's fees to White under Code of Civil Procedure section 1021.5. The trial court awarded attorney's fees to White as the prevailing party in the action, and her subsequent resignation does not change that status. Moreover, in reviewing the attorney's fees award, we must address the merits of her writ petition because "'the propriety of the trial court's ruling on the merits of the action determines whether [the plaintiff] was eligible for an award of attorney fees [under Code of Civil Procedure section 1021.5] as the successful party.'" (*Indio Police Command Unit Assn. v. City of Indio* (2014) 230 Cal.App.4th 521, 534; see also *Save Our Residential Environment v. City of West Hollywood* (1992) 9 Cal.App.4th 1745, 1750-1751 [where award of attorney's fees under Code of Civil Procedure section 1021.5 "depends on the propriety of the trial court's ruling on the merits of the action, the appeal is not moot"].) In addition, we agree with White that the question of whether the POBRA requires a law enforcement agency to disclose to a peace officer internal memoranda concerning his or her fitness for duty raises an issue of continuing public interest that is likely to recur. (*Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 867 ["[w]hen an action involves a matter of continuing public interest that is likely to recur, a court may exercise an inherent discretion to resolve that issue, even if an event occurring during the pendency of the appeal normally would render the matter moot"].)

However, although we are exercising our discretion to address whether the County violated the POBRA in failing to disclose the challenged memoranda to White, we decline to consider whether the injunctive relief ordered by the trial court to remedy the alleged violation was proper. In issuing the writ of mandate, the trial court ordered the County to allow White to respond to the adverse comments contained in the memoranda, enjoined the County from requiring White to undergo a future medical reevaluation based on the adverse comments in the memoranda or White's responses to them, and enjoined the County from retaliating against White based on the adverse comments or White's responses, unless the responses reflected a danger to White, the County, or members of the public. The injunctive relief ordered by the trial court thus related directly to the employment relationship between the County and White going forward. Given that White is no longer employed by the County, the question of whether the scope of injunctive relief ordered was appropriate has been rendered moot.

## II.    Writ of Mandate for Violation of the POBRA

### A.    Standard of Review

"In reviewing a trial court's decision on a petition for writ of mandate, we uphold the trial court's factual findings if supported by substantial evidence. [Citation.] We, however, independently review the court's decisions on questions of law, including the trial court's interpretation of statutory language, such as POBRA. [Citations.]" (*Barber v. Department of Corrections & Rehabilitation* (2012) 203 Cal.App.4th 638, 644.) In cases where "'the facts are undisputed and the issue involves statutory interpretation, we exercise our independent judgment and review the matter de novo. [Citation.]' [Citation.]" (*McMahon v. City of Los Angeles* (2009) 172 Cal.App.4th 1324, 1331.)

The rules governing statutory interpretation are well-settled. "'"[W]e begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context. . . ."' [Citations.] The plain meaning controls if there is no ambiguity in the statutory language.' [Citation.] In interpreting a statutory provision, 'our task is to select the construction that comports

12

most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results.' [Citation.]" (*Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1384-1395 (*Poole*).)

**B.     Violation of Government Code Section 3305**

The POBRA provides public safety officers with certain rights concerning their employment, including rights with respect to their personnel files. Government Code section 3305 states, in pertinent part, that "[n]o public safety officer shall have any comment adverse to his interest entered in his personnel file, or any other file used for any personnel purposes by his employer, without the public safety officer having first read and signed the instrument containing the adverse comment indicating he is aware of such comment." Section 3306 provides that "[a] public safety officer shall have 30 days within which to file a written response to any adverse comment entered in his personnel file," and that "[s]uch written response shall be attached to, and shall accompany, the adverse comment." Section 3306.5 entitles a public safety officer, upon reasonable request, "to inspect personnel files that are used or have been used to determine that officer's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action."

Section 3309.5 of the Government Code sets forth the remedies available to a public safety officer for a violation of one or more of these provisions. Subdivision (c) of the statute provides that "[i]n any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary injunction, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer." (Gov. Code, § 3309.5, subd. (c).)

13

In *County of Riverside v. Superior Court* (2002) 27 Cal.4th 793 (*Riverside*), the California Supreme Court addressed the scope of documents subject to disclosure under Government Code section 3305. The Court specifically considered whether a law enforcement agency must disclose to a probationary peace officer confidential documents that were prepared in the course of a routine background investigation of the officer for the purpose of determining whether to continue his employment. The Court concluded the language of the POBRA should be construed broadly to include any document that """"may serve as a basis for affecting the status of [a peace officer's] employment,"""" regardless of whether it is kept in a file separate from the officer's personnel file. (*Id*. at p. 802.) In "reject[ing] the assertion that a law enforcement agency's background investigation of a peace officer during probationary employment is somehow not a personnel matter subject to the [POBRA]," the Court reasoned that the materials in the file at issue "unquestionably '"may serve as a basis for affecting the status of the employee's employment"'" [citation]; indeed, that is the very purpose of the background investigation." (*Ibid*.) The Court further concluded that where "the adverse comments arise out of an investigation, the very purpose of which was to assess the employee's qualifications for continued employment, . . . the [POBRA] applies, whether or not the comments are prepared and filed prior to termination." (*Id*. at p. 803.)

More recently, the California Supreme Court considered the meaning and scope of Government Code section 3255, a provision in the Firefighters Procedural Bill of Rights Act (FBRA; Gov. Code § 3250 et seq.) that is substantially similar to the POBRA provision at issue here.[6] (*Poole*, *supra*, 61 Cal.4th 1378.) In *Poole*, the Supreme Court

---

**6**      Government Code section 3255 provides that "[a] firefighter shall not have any comment adverse to his or her interest entered in his or her personnel file, or any other file used for any personnel purposes by his or her employer, without the firefighter having first read and signed the instrument containing the adverse comment indicating he or she is aware of the comment." As the Supreme Court observed, this statute "is virtually identical to [the] statute applicable to public safety officers ([Gov. Code,] § 3305), and it establishes rights regarding adverse comments that are very similar to those that have been granted to teachers. (Ed. Code, § 44031, subd. (b)(1).)

addressed whether Government Code section 3255 provides an employee with "the right to review and respond to negative comments in a supervisor's daily log, consisting of notes that memorialize the supervisor's thoughts and observations concerning an employee, which the supervisor uses as a memory aid in preparing performance plans and reviews." (*Id*. at p. 1382.) In that case, the supervisor and author of the daily log was the only person who had access to it. Although the supervisor discussed some of the incidents described in the log with his superiors, he did not permit them to review the log itself. Additionally, to the extent that the supervisor used any of the adverse comments contained in the log in reviewing the employee's performance, those comments were disclosed to the employee as part of a performance plan or review before being entered into his personnel file. (*Id*. at p. 1384.) The question before the Supreme Court was whether "negative comments contained in a document memorializing a supervisor's own thoughts and observations that is not itself made available to or shared with anyone else" constitutes a "file 'used for any personnel purposes by his or her employer.'" (*Ibid*.)

In construing the scope of Government Code section 3255, the Supreme Court in *Poole* determined that "the Legislature was not concerned with any and all files that might in some sense be connected with personnel matters; the Legislature was, rather, specifically concerned with 'personnel files that are used or have been used to determine th[e] firefighter's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action." (*Poole*, *supra*, 61 Cal.4th at pp. 1385-1386.) The Court thus concluded that the statutory phrase "'any other file used for any personnel purposes by his or her employer' . . . should be interpreted to encompass any written or computerized record that, although not designated a personnel file, . . . may be used by the employer to make decisions about promotion, discipline, compensation, and the like." (*Id*. at p. 1386.) The Court further concluded that, as recognized in cases applying the POBRA and other similar statutes, "a document containing adverse comments may come

Consequently, cases interpreting those statutes are relevant to [the] interpretation of [Government Code] section 3255." (*Poole*, *supra*, 61 Cal.4th at p. 1386, fn. 2.)

15

within the disclosure requirement even if not formally entered into the official personnel file, if the document was either (1) maintained in such a manner that it would be available to those making personnel decisions in the future, or (2) was actually used by the employer in making a personnel decision, or both." (*Id*. at p. 1387.) Applying this statutory interpretation to the case before it, the Court in *Poole* held that "because the log was not shared with or available to anyone other than the supervisor who wrote the log, it does not constitute a file 'used for any personnel purposes by his or her employer' and [Government Code] section 3255 does not apply." (*Id*. at p. 1381.)

In reaching its holding in *Poole*, the Supreme Court found its prior decision in *Miller v. Chico Unified School Dist.* (1979) 24 Cal.3d 703 (*Miller*) distinguishable. In *Miller*, the Court held that, under Education Code section 44031, a school principal was entitled to review and respond to "derogatory written material compiled and maintained by a school district even though the material has not been properly placed in his personnel file" because it had been used by the school board in its decision to transfer the principal to a teaching position. (*Id*. at p. 707.) The principal's supervisor had used his "'personal notes and calendar'" to dictate a summary of "'meetings, contacts, occurrences, and events'" involving the principal, which were then transcribed into 20 memoranda that were submitted to the school board for its use in deciding whether to reassign the principle to a teaching position. (*Id*. at p. 711.) The school board "received [these] confidential memoranda without first allowing [the principal] the opportunity to correct any inaccurate derogatory information contained therein." (*Id*. at p. 714.) The Court in *Miller* rejected the school board's argument that these memoranda were never "'entered or filed'" in the principal's personnel file, concluding that an employer "may not avoid the requirements of the statute by maintaining a 'personnel file' for certain documents relating to an employee," while "segregating elsewhere under a different label materials which may serve as a basis for affecting the status of the employee's employment." (*Id*. at pp. 712-713.) In distinguishing *Miller*, the Court in *Poole* noted that the adverse comments in *Miller* were contained in documents available to those making personnel decisions about the principal. (*Poole*, *supra*, at p. 1389.) In contrast,

16

the supervisor in *Poole* "did not share his log with anyone; he merely discussed with others some of the incidents that he had observed and also recorded in his log." (*Ibid*.) Because "there was no evidence that [the] log would be available to anyone making personnel decisions in the future," it did not fall within the scope of the statute. (*Ibid*.)

Applying the reasoning in *Riverside*, *Poole*, and *Miller* to the present case, we conclude that the memoranda that were prepared by White's supervisors and submitted to their superiors regarding their observations and concerns about White's fitness for duty constituted a file that was "used for any personnel purposes by [the] employer" within the meaning of Government Code section 3305. It is undisputed that the memoranda were transmitted to members of upper management at the DA's Bureau of Investigation. Accordingly, as in *Riverside* and *Miller*, the documents were available to individuals with the authority to make personnel decisions about White's employment status, including decisions about her qualifications for employment, promotion, compensation, and discipline. It is also undisputed that the memoranda were actually used by management in making a formal request to OHP for consent to ordering White to submit to a medical reevaluation. Indeed, Mueller specifically stated in his declaration that the memoranda "were used as the factual basis for the DA's request to [OHP]" and "were an integral part of the DA's request." Dr. Souris likewise stated in a declaration that Mueller's December 7, 2011 letter, which summarized the contents of the memoranda, "detail[ed] the factual basis ultimately leading to [Dr. Souris] providing the DA with OHP's 'consent'" to order White's reevaluation. The fact that Dr. Souris did not receive copies of the memoranda with the DA's request is not determinative of whether these documents came within the scope of Government Code section 3305. The disclosure required by the statute was triggered when White's supervisors, Carter and Carver, transmitted the memoranda to upper management at the Bureau of Investigation, who could then use the memoranda to seek consent for ordering a medical reevaluation of White or to make other personnel decisions affecting White's employment status.

17

The County argues that the memoranda were not subject to disclosure under Government Code section 3305 because they were not actually used to determine White's qualifications for employment, promotion, compensation, or disciplinary action, but rather were used for the sole purpose of communicating matters of concern about White's psychological condition to upper management. However, the DA based its decision to seek a medical reevaluation for White on the information detailed in the memoranda about White's psychological condition, and as the trial court observed, the results of a peace officer's medical reevaluation can lead to significant changes in his or her employment status. Under the Los Angeles County Civil Service Rules, an employee who is found to be partially or fully incapacitated following a medical reevaluation may be subject to a range of employment actions, including a modification of duties, a change of classification or reduction in position, or termination if there is no suitable position that the employee can perform satisfactorily. (L.A. County Civil Service Rules, rule 9.08.) Because Government Code section 3305 applies to any document that """"may serve as a basis for affecting the status of [a peace officer's] employment"""" (*Riverside*, *supra*, 27 Cal. 4th at p. 802), White had the right to review and respond to documents that formed the basis of the DA's request for a medical reevaluation.

The County also asserts that the memoranda could not have been used to affect White's employment status because she failed to comply with the DA's order to appear for her medical reevaluation. However, even if the reevaluation ordered for White did not result in any change in her employment status due to her refusal to appear, the memoranda would have remained available to upper management at the Bureau of Investigation, and thus, could have been used in future personnel decisions affecting White's employment. As the Court of Appeal observed in *Sacramento Police Officers Assn. v. Venegas* (2002) 101 Cal.App.4th 916 (*Venegas*), "the broad language employed by the Legislature in sections 3305 and 3306 does not limit their reach to comments that have resulted in, or will result in, punitive action against an officer. . . . [E]ven though an adverse comment does not directly result in punitive action, it has the potential of creating an adverse impression that could influence future personnel decisions concerning

18

an officer, including decisions that do not constitute discipline or punitive action." (*Id*. at p. 926.) Therefore, "regardless of whether the employing agency contemplates or has rejected further action regarding an adverse comment made against a peace officer employee, the officer is entitled to disclosure of the comment if it is entered in an agency file used for a personnel purpose." (*Ibid*.; see also *Seligsohn v. Day* (2004) 121 Cal.App.4th 518, 530 [in determining whether a document is subject to disclosure under Government Code section 3305, "what is relevant is not whether the document *will serve* or *has served* as a basis for disciplinary action but whether it *may serve* such a function"].)

The County further contends that the memoranda did not fall within the scope of Government Code section 3305 because the documents were deemed "confidential" and maintained in a separate "Supervisor's Working File" rather than in White's personnel file. In support of this claim, the County notes under Government Code section 3303, which prescribes the protections that apply when a peace officer is subject to certain administrative interrogations, an officer is entitled to "any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential." (Gov. Code, § 3303, subd. (g).) However, as the Court of Appeal recognized in *Venegas*, Government Code section 3303, subdivision (g) "does not give [an employer] an absolute right to deem any and all information confidential and to assert such confidentiality against any and all requests for access. It applies in the circumstances set forth in [Government Code] section 3303, i.e., with respect to the interrogation of a peace officer under investigation." (*Venegas*, *supra*, 101 Cal.App.4th at p. 923.) Because the County did not seek to withhold the memoranda during the course of an administrative interrogation of White, the confidentiality limitation set forth in Government Code section 3303 does not apply. Additionally, the fact that the County maintained the memoranda in a separate file labeled "Supervisor's Working File" is of no import. As the Supreme Court succinctly stated in *Riverside*, "the label placed on the . . . file is irrelevant." (*Riverside*, *supra*, 27 Cal.4th at p. 802; see also *Venegas*, *supra*, at p. 928 ["the law does not permit a law enforcement agency to shield [an adverse]

19

comment from a peace officer employee by purporting to segregate it from other personnel files"]; *Aguilar v. Johnson* (1988) 202 Cal.App.3d 241, 251 ["compliance with Government Code sections 3305 and 3306 is not excused simply because the complaint is placed in a file separate from the personnel file"].)  Instead, the relevant inquiry is whether the document "was actually used by the employer in making a personnel decision" or "maintained in such a manner that it would be available to those making personnel decisions in the future." (*Poole*, *supra*, 61 Cal.4th at p. 1387.)  Given that the memoranda were prepared for and transmitted to upper management at the DA's Bureau of Investigation, the documents inarguably would be available to those making personnel decisions about White's employment status in the future.

The County claims that, even if the memoranda were subject to disclosure under Government Code section 3305, White is not entitled to seek any relief under the statute because she received copies of the memoranda during the course of *White I* and did not file a response to any adverse comments contained in the documents within 30 days of her receipt, as required by Government Code section 3306.  This argument is unavailing. Government Code section 3305 provides an employee with the right to review an adverse comment before that comment is entered into a file used for personnel purposes.  (Gov. Code, § 3305 ["[n]o public safety officer shall have any comment adverse to his interest entered in . . . any other file used for any personnel purposes by his employer, without the public safety officer having first read and signed the instrument containing the adverse comment"]; see also *Poole*, *supra*, 61 Cal.4th at p. 1390 [timing requirement in FBRA provision requiring disclosure of adverse comments in file used for personnel purposes "is the requirement that the employee have the opportunity to review the adverse comment before it is actually entered into the file"].)  In this case, it is undisputed that the memoranda were not disclosed to White before they were placed in the "Supervisor's Working File," submitted to upper management at the DA's Bureau of Investigation, or used by the DA as the basis for seeking consent to order a medical reevaluation for White.  As the Supreme Court noted in *Riverside*, it would "permit an inappropriate end run around the [POBRA]" if a law enforcement agency could withhold disclosure of

20

adverse comments concerning an employee until after those comments were used by the agency for personnel purposes. (*Riverside*, *supra*, 27 Cal.4th at p. 803; see also *Aguilar v. Johnson*, *supra*, 202 Cal.App.3d at pp. 250-251 [police chief's belated compliance with Government Code sections 3305 and 3306 did not preclude officer from seeking judicial relief based on prior violations of the statutes].) Accordingly, the County's belated disclosure of the memoranda during the course of *White I* did not preclude White from enforcing her rights under Government Code section 3305 in a court of law.

For these reasons, the trial court did not err in concluding that the County violated Government Code section 3305 in failing to disclose the memoranda to White, and that White was entitled to seek judicial relief under Government Code section 3309.5 based on the County's POBRA violation.

## III. Attorney's Fees Under Code of Civil Procedure Section 1021.5

### A. Standard of Review

An award of attorney's fees under Code of Civil Procedure section 1021.5 generally is reviewed on appeal for an abuse of discretion. (*Indio Police Command Unit Assn. v. City of Indio*, *supra*, 230 Cal.App.4th at p. 541.) "'[W]ith respect to the amount of fees awarded, there is no question our review must be highly deferential to the views of the trial court.' [Citations.]" (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1309.) As our Supreme Court has observed, "'[t]he "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong" -- meaning that it abused its discretion. [Citations.]'" (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)

### B. Statutory Criteria for an Attorney's Fee Award

Code of Civil Procedure section 1021.5 provides in relevant part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or

nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

Accordingly, "'[t]o obtain attorney fees under [Code of Civil Procedure] section 1021.5, the party seeking fees must show that the litigation: ""'(1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) [was necessary and] imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter.' [Citation.]" [Citation.]'" [Citations.] Because the statute states the criteria in the conjunctive, each must be satisfied to justify a fee award. [Citations.]' [Citation.]" (*City of Maywood v. Los Angeles Unified School Dist.* (2012) 208 Cal.App.4th 362, 429.)

With respect to the first element, the California Supreme Court has recognized that the enforcement of procedural rights in the POBRA serves to vindicate an important right affecting the public interest. (*Baggett v. Gates* (1982) 32 Cal.3d 128, 143 (*Baggett*).) In *Baggett*, four police officers sued the City of Los Angeles and its police chief because they had been reassigned to lower paying positions after an internal investigation into alleged misconduct without being given an opportunity for an administrative appeal. (*Id*. at p. 133.) The Supreme Court held that Government Code sections 3303 and 3304 provide a right to an administrative appeal to police officers who are reassigned to lower paying positions, and the officers who sued to enforce that right were entitled to an award of attorney's fees under Code of Civil Procedure section 1021.5. (*Id*. at pp. 141-143.) In considering whether the officer's action had resulted in the enforcement of an important public right, the Court specifically concluded: "Plaintiffs' action resulted in securing for themselves and many others the basic rights and protections of the [POBRA]. . . . [T]hese rights and protections are matters of statewide concern. It follows that the rights vindicated by plaintiffs are sufficiently 'important' to justify an attorney fee award." (*Id*. at p. 143.) Cases following *Baggett* have similarly concluded that lawsuits enforcing procedural rights in the POBRA enforce important public rights for purposes of awarding

22

attorney's fees under Code of Civil Procedure section 1021.5. (See, e.g., *Robinson v. Chowchilla* (2011) 202 Cal.App.4th 382, 395-396 [enforcement of right to administrative appeal prior to punitive action under Government Code section 3304]; *Otto v. Los Angeles Unified School District* (2003) 106 Cal.App.4th 328, 335-336 [same]; *Aguilar v. Johnson*, *supra*, 202 Cal.App.3d at p. 253 [enforcement of right to review and respond to citizen complaints placed in personnel file under Government Code sections 3305 and 3306]; *Riverside Sheriffs' Assn. v. County of Riverside* (2007) 152 Cal.App.4th 414, 422 [enforcement of procedural protections afforded during interrogation under Government Code section 3303]; *Mounger v. Gates* (1987) 193 Cal.App.3d 1248, 1259 [same].)

With respect to the second element, the Supreme Court in *Baggett* concluded that an action to enforce procedural rights under the POBRA also confers a significant benefit on the general public by helping "to maintain stable relations between peace officers and their employers and thus to assure effective law enforcement. . . ." (*Baggett*, *supra*, 32 Cal.3d at p. 143.) Following *Baggett*, courts repeatedly have recognized that a significant benefit is conferred on the general public or a large group of persons when the procedural protections contained in the POBRA are enforced. (See, e.g., *Robinson v. Chowchilla*, *supra*, 202 Cal.App.4th at p. 399; *Riverside Sheriffs' Assn. v. County of Riverside*, *supra*, 152 Cal.App.4th at p. 422; *Otto v. Los Angeles Unified School District*, *supra*, 106 Cal.App.4th at pp. 335-336; *Aguilar v. Johnson*, *supra*, 202 Cal.App.3d at p. 253; *Mounger v. Gates*, *supra*, 193 Cal.App.3d at p. 1259.) Indeed, "'"[t]he rights and protections afforded by [POBRA] benefit not only public safety officers but the public in general. By promoting stable employer-employee relations, [POBRA] fosters a solid and secure public safety work force. [Citation.] It also encourages peace officer cooperation in investigations of possible wrongdoing. [Citation.] Alleged violations of [POBRA] therefore implicate duties 'which inure[] to the benefit of the public at large' [citation], transcending the employer-employee relationship…." [Citation.]' [Citations.]" (*Riverside Sheriffs' Assn. v. County of Riverside*, *supra*, at p. 422.)

With respect to the third element regarding the necessity and financial burden of private enforcement, the Supreme Court in *Baggett* stated: "[T]he record before this court indicates that the financial burden this suit placed on plaintiffs was out of proportion to their personal stake in the case. By their action, plaintiffs have secured the enforcement of basic procedural rights, . . . However, enforcement of these procedural rights may well not result in any pecuniary benefit to plaintiffs themselves. [Citation.]. . . [¶] This court is satisfied that plaintiffs' action meets the requirements of section 1021.5 of the Code of Civil Procedure." (*Baggett*, *supra*, 32 Cal.3d at p. 143.) Other courts have likewise held that a plaintiff is entitled to attorney's fees for enforcing procedural rights under the POBRA where the cost of prevailing in the action ultimately transcends the plaintiff's personal interest in the litigation. (See, e.g., *Riverside Sheriffs' Assn. v. County of Riverside*, *supra*, 152 Cal.App.4th at pp. 422-433; *Otto v. Los Angeles Unified School District*, *supra*, 106 Cal.App.4th at pp. 335-336; *Henneberque v. City of Culver City* (1985) 172 Cal.App.3d 837, 846-847.)

In this case, we conclude that the trial court did not abuse its discretion in determining that White was entitled to an award of attorney's fees under Code of Civil Procedure section 1021.5. White's action to enforce the procedural rights afforded to peace officers under the POBRA to review and respond to adverse comments in personnel records served to vindicate an important right affecting the public interest and conferred a significant benefit on a large group of persons. Throughout the litigation, the County maintained that internal memoranda shared among management about a peace officer's fitness for duty were not subject to disclosure under the POBRA so long as the documents were marked confidential and kept in a separate file from the officer's personnel file. While the trial court's ruling that such materials must be disclosed under the POBRA conferred a direct non-pecuniary personal benefit on White, the outcome of the litigation also benefits other peace officers who may be the subject of similar internal documents containing adverse comments about the officers' fitness for duty.

Additionally, the trial court reasonably could find that the cost of litigating the action to a successful conclusion transcended White's personal interest in the matter. The question of whether the County could order White to submit to a medical reevaluation based on the documented concerns about her fitness for duty has now been the subject of two writ proceedings filed by White and two appeals filed by the County. Although White successfully enforced the basic procedural rights guaranteed under Government Code sections 3305 and 3306 by prosecuting the present action and obtaining injunctive relief, she did not secure any direct pecuniary benefit for herself through such enforcement, as her request for statutory penalties under the POBRA was denied. On this record, the trial court reasonably concluded that White satisfied each of the enumerated criteria in Code of Civil Procedure section 1021.5, and thus, was entitled to an attorney's fee award.

In arguing that the trial court erred in awarding attorney's fees, the County asserts that the litigation did not result in any novel interpretation of the POBRA that could benefit the public at large, but rather in the application of an already existing right under Government Code section 3305 to documents pertaining to White. However, "'[t]he fact that litigation enforces existing rights does not mean that a substantial benefit to the public cannot result. Attorney fees have consistently been awarded for the enforcement of well-defined, existing obligations. [Citations.]' [Citation.]" (*Otto v. Los Angeles Unified School District*, *supra*, 106 Cal.App.4th at p. 335.) Because the County vigorously denied that the documents were subject to disclosure under Government Code section 3305, White had to file suit to enforce her rights under the statute, which justified an attorney's fee award. (*Riverside Sheriffs' Assn. v. County of Riverside*, *supra*, 152 Cal.App.4th at p. 422.) The County also contends that an award of attorney's fees was not warranted because the primary effect of the litigation was the vindication of White's own personal rights and economic interests. However, "where each of the criteria is met, the fact the primary effect of the action was to vindicate a plaintiff's personal economic interests does not foreclose an award of attorney fees" under Code of Civil Procedure section 1021.5. (*Robinson v. Chowchilla*, *supra*, 202 Cal.App.4th at p. 399.) In this case,

25

White satisfied each of the statutory criteria and there were no special circumstances rendering an award of attorney's fees unjust. (*Id*. at p. 391 ["attorney fees must be awarded when the statutory criteria are met unless special circumstances render such an award unjust"].)  As the prevailing party in the action, White was therefore entitled to an attorney's fee award under Code of Civil Procedure section 1021.5.

### *C.*  **Amount of Attorney's Fee Award**

The County also challenges the amount of attorney's fees awarded by the trial court on the ground that White's request for attorney's fees was excessive and duplicative of work that was performed in litigating the prior action in *White I*.  We see no abuse of discretion in the trial court's determination of the attorney's fee award.  The trial court awarded White $30,845 in attorney's fees based on the lodestar method, which was slightly less than the amount of fees requested by White.  In support of the motion for attorney's fees, White's counsel submitted a declaration stating that she had reviewed the attached attorney's fees bills, and that "[a]ll the time reflected on the attached bills was spent in connection with the present litigation only."   While the County speculates that White's attorneys should have spent less time on discovery given the factual similarities between the present action and *White I*, the County has failed to demonstrate that the amount of time expended was unreasonable.  The record further reflects that the trial court carefully reviewed the bills submitted by White's counsel, reduced the amount requested by $780 for attorney conferences that appeared to be duplicative, and then determined that, apart from that single reduction, the hourly rates requested and total number of hours expended were reasonable and necessary.  The trial court's award of attorney's fees based on the hours reasonably spent by White's attorneys in litigating the action to a successful conclusion did not constitute an abuse of discretion.

## DISPOSITION

The judgment is affirmed.  White shall recover her costs on appeal.


ZELON, Acting P. J.


We concur:


SEGAL, J.


BLUMENFELD, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.